**UNITED STATES ex rel. GUARINO v. UHL, Director of Immigration.**

No. 39.

Circuit Court of Appeals, Second Circuit.

Nov. 6, 1939.

Milton J. Meltzer, of New York City, for appellant.

Dolores C. Faconti, of New York City, for appellee.

Before L. HAND, CLARK, and PATTERSON, Circuit Judges.

L. HAND, Circuit Judge.

A writ of habeas corpus was granted in this case to review an order of deportation, issued against the relator, under § 19 of the Immigration Act of 1917, 8 U.S.C. A. § 155, because of two convictions for crimes involving moral turpitude. The second of these was for passing counterfeit money, and the alien does not argue that this was not within the statute; he challenges only the first. On January 9, 1925, when he was seventeen years old, he pleaded guilty to an indictment charging that he had had "in his possession * * * under circumstances evincing an intent to use and employ the same * * * in the commission of some crime * * * unknown, one jimmy, the same being adapted, designed and commonly used for the commission of the crimes of burglary and larceny." He was thereupon sentenced to the reformatory upon an indeterminate term. Section 408 of the New York Penal Law defined the crime in almost the same words, except that the word, "jimmy", did not appear in it. The question is whether the crime, so described, involved "moral turpitude".

It will be observed that the indictment was satisfied by an intent to commit any crime whatever, no matter how morally innocent it might be. Hence, in accordance with the doctrine, which we have several times announced, unless the possession of the jimmy with intent to use it for any crime at all, was "necessarily", or "inherently", immoral, the conviction did not answer the demands of § 19 of the act of 1917. United States ex rel. Mylius v. Uhl, 2 Cir., 210 F. 860; United States ex rel. Robinson v. Day, 2 Cir., 51 F.2d 1022; United States ex rel. Zaffarano v. Corsi, 2 Cir., 63 F.2d 757. There is nothing necessarily immoral in the possession of a jimmy; it might be part of a penologist's collection. So far, all would agree; and the only question is whether its possession with intent to commit a crime adds the lacking element. That depends upon what crime the possessor intends to commit with it; or, put otherwise, whether all crimes which he may intend are "necessarily", or "inherently", immoral. A jimmy is primarily meant to pry open doors or windows so as to gain entrance into buildings of one sort or another. Any "intrusion" upon a city lot is a misdemeanor in the State of New York (Penal Law, § 2036); so is a forcible entry anywhere (Penal Law, § 2034); so is entering a building to commit a crime (Penal Law, § 405); e. g. to commit assault in the third degree (Penal Law, §§ 244, 245). Such crimes by no means "inherently" involve immoral conduct; boys frequently force their way into buildings out of curiosity, or a love of mischief, intending no more than to do what they know is forbidden. Such conduct is no more than a youthful prank, to which most high-spirited boys are more or less prone; it would be to the last degree pedantic to hold that it involved moral turpitude and to visit upon it the dreadful penalty of banishment, which is precisely what deportation means to one who has lived here since childhood. It is quite true that in the case at bar other circumstances make it highly unlikely that this alien had possession of the jimmy for any such relatively innocent purpose; but that is quite irrelevant. The decisions cited hold that the deporting officials may not consider the particular conduct for which the alien has been convicted; and indeed this is a necessary corollary of the doctrine itself.

Order reversed; relator discharged.