**Thomas Anthony DALTON, Petitioner,**

**v.**

**John ASHCROFT, Attorney General of the United States; Immigration and Naturalization Service, Respondents.**

No. 00–4123.

United States Court of Appeals, Second Circuit.

Argued Jan. 26, 2001.

Decided July 20, 2001.

**202**

Mark T. Kenmore, Buffalo, NY, for Petitioner.

Meredith E. Kotler, Assistant United States Attorney, New York, NY, (Mary Jo White, United States Attorney, Diogenes P. Kekatos and Jeffrey S. Oestericher, Assistant United States Attorneys, of counsel), for Respondents.

Before JOHN M. WALKER, Jr., Chief Judge, OAKES and PARKER, Circuit Judges.

OAKES, Senior Circuit Judge:

Petitioner was ordered removed from the United States under § 237(a)(2)(A)(iii) of the Immigration and Nationality Act of 1952 ("INA"), codified at 8 U.S.C. § 1227(a)(2)(A)(iii)(2000), as an alien convicted of an "aggravated felony" based upon his New York State felony conviction for operating a vehicle while intoxicated ("DWI").[1] Petitioner claims that his conviction does not amount to a "crime of violence" under 18 U.S.C. § 16(b)(2000), as is required by the definition of "aggravat-

ed felony" provided in 8 U.S.C. § 1101(a)(43)(F)(2000).

The principal question on appeal is whether a felony DWI conviction under New York State law constitutes a "crime of violence" under 18 U.S.C. § 16(b). We conclude that it does not and accordingly vacate the deportation order.

## BACKGROUND

### I. *Factual Background*

Thomas Anthony Dalton, a native and citizen of Canada, has been living continuously in the United States as a lawful permanent resident since 1958, before he was one year old. His parents and siblings reside in the United States as well. Dalton has been convicted several times under New York Vehicle and Traffic Law ("NYVTL") § 1192.3 for operating a vehicle while intoxicated. He pleaded guilty to his most recent DWI offense on January 15, 1998, and due to two previous convictions within ten years preceding the third, his crime and sentence were enhanced under NYVTL § 1192.1(c)(ii) to become a class D felony with an accompanying 1½ to 4½ years' imprisonment term.

### II. *Statutory Background*

Under 8 U.S.C. § 1227(a)(2)(A)(iii), "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." An "aggravated felony" is defined in 8 U.S.C. § 1101(a)(43)(F) as "a crime of violence (as defined in section 16 of Title 18 . . . ) for which the term of imprisonment [is] at least one year." A "crime of violence," in turn, is a term of art defined in 18 U.S.C. § 16 as:

---

**1.** By using the phrases "operating a vehicle while intoxicated," "driving while intoxicated" and "driving under the influence" (collectively "DWI") interchangeably in this opinion, we do not imply that there are not critical legal differences among them which may arise in the future.

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

## III. *Procedural Background*

In April 1999, while Dalton was serving his prison sentence, the Immigration and Naturalization Service ("INS") initiated removal proceedings against him, charging that he was removable as an alien convicted of an aggravated felony resulting from a felony DWI conviction in violation of NYVTL § 1192.3.

During two telephonic removal hearings, Dalton admitted that he was convicted under NYVTL § 1192.3, but denied the ground for removal, namely, that he had committed an "aggravated felony" as defined under 8 U.S.C. § 1101(a)(43)(F) or a "crime of violence" as defined under 18 U.S.C. § 16(b).

In December 1999, the Immigration Judge ("IJ") rejected Dalton's argument and ordered him removed to Canada without the opportunity to request relief.[2] Dalton appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). Basing its reasoning on BIA precedent regarding Texas and Arizona DWI statutes[3] as well as a Fifth Circuit opinion that has since been withdrawn,[4] the BIA concluded on May 17, 2000, that a violation of NYVTL § 1192.3 constitutes a "crime of violence"[5] and affirmed the IJ's removal order.

## DISCUSSION

■ As an initial matter, we note that the scope of our review in this case is limited jurisdictionally under 8 U.S.C. § 1252(a)(2)(C)(2000), which precludes judicial review of final orders of removal against aliens who are removable by reason of having committed, *inter alia*, an aggravated felony. We do retain jurisdiction, however, to review the question whether, as a matter of law, Dalton committed an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(F), as defined by 18 U.S.C. § 16. *See Bell v. Reno*, 218 F.3d 86, 89 (2d Cir.2000).

■ We also note that while we apply *Chevron* deference, *see Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), to the BIA's interpretation of the INA, we review *de novo* its interpretation of federal or state criminal statutes. *See Sutherland v. Reno*, 228 F.3d 171, 173–74 (2d Cir.2000) (citing *Michel v. INS*, 206 F.3d 253, 262 (2d Cir. 2000)). Accordingly, because the INA defines an "aggravated felony" in § 1101(a)(43)(F) by reference to a "crime

---

**2.** Certain lawful permanent residents subject to deportation may seek discretionary cancellation of their order of removal. However, under 8 U.S.C. § 1229b(a)(3)(2000), permanent residents convicted of any aggravated felony are expressly excepted from this group.

**3.** *See In re Puente–Salazar*, Int. Dec. No. 3412, 1999 WL 770709 (BIA Sept. 29, 1999) (Texas); *In re Magallanes–Garcia*, Int. Dec. No. 3341, 1998 WL 133301 (BIA Mar. 19, 1998) (Arizona).

**4.** *See Camacho–Marroquin v. INS*, 188 F.3d 649 (5th Cir.1999), *withdrawn* 222 F.3d 1040 (5th Cir.2000).

**5.** The BIA determined that Dalton committed a "crime of violence" within the meaning of § 16(b). It made no finding on whether his conviction met the elements of § 16(a). On appeal, the parties do not dispute that Dalton's conviction fails to satisfy § 16(a).

of violence" in 18 U.S.C. § 16, we review *de novo* the question whether NYVTL § 1192.3 constitutes a "crime of violence" that, in turn, constitutes a deportable "aggravated felony" under the INA.

### I. *Application of Categorical Analysis to "Crime of Violence"*

■■■ Under the language of the statute, a § 16(b) "crime of violence" is analyzed "by its nature." We believe that this language compels an analysis that is focused on the intrinsic nature of the offense rather than on the factual circumstances surrounding any particular violation. *See United States v. Velazquez–Overa,* 100 F.3d 418, 420–21 (5th Cir.1996) (citing *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990)); *United States v. Aragon,* 983 F.2d 1306, 1312 (4th Cir.1993); *United States v. Rodriguez,* 979 F.2d 138, 140–41 (8th Cir.1992). Under this approach, commonly referred to as the "categorical approach" to criminal statutory interpretation, "the singular circumstances of an individual petitioner's crimes should not be considered, and only the minimum criminal conduct necessary to sustain a conviction under a given statute is relevant[.]" *Michel v. INS,* 206 F.3d at 270 (Calabresi, J., dissenting); *see also Tapia Garcia v. INS,* 237 F.3d 1216, 1221–22 (10th Cir.2001) (citations omitted).

In this Circuit, we have long endorsed categorical analyses of criminal statutes in the context of deportation orders for crimes of moral turpitude. *See United States ex rel. Guarino v. Uhl,* 107 F.2d 399, 400 (2d Cir.1939). Our decisions in this area stand for the proposition that the offense, judged from an abstracted perspective, must inherently involve moral turpitude; in other words, any conduct falling within the purview of the statute must by its nature entail moral turpitude. *See id.* (holding that because defendant could be convicted under relevant statute for crimes not involving moral turpitude, statute could not form basis for order of deportation based upon commission of crime of moral turpitude); *see also United States ex rel. Zaffarano v. Corsi,* 63 F.2d 757, 758 (2d Cir.1933) (finding that conviction for second degree assault did not "inherent[ly]" involve moral turpitude because statute could encompass crimes that both did and did not involve moral turpitude); *United States ex rel. Robinson v. Day,* 51 F.2d 1022, 1022–23 (2d Cir.1931) ("When by its definition [a statute] does not necessarily involve moral turpitude, the alien cannot be deported because in the particular instance his conduct was immoral."). More recently, we have reaffirmed this approach in *Michel v. INS,* where we stated that "[a]s a general rule, if a statute encompasses both acts that do and do not involve moral turpitude, the BIA cannot sustain a deportability finding [predicated on moral turpitude, based] on that statute." 206 F.3d at 263 (quoting *Hamdan v. INS,* 98 F.3d 183, 187 (5th Cir.1996)).

Based upon the language of the statute requiring analysis of the "nature" of the crime, as well as by analogy to this Circuit's law regarding moral turpitude, we believe that the categorical approach is appropriate for determining whether an offense is a crime of violence under § 16(b) in the context of deportation proceedings.[6]

---

**6.** We note that our conclusion is in accord with that of other courts. *See United States v. Chapa–Garza,* 243 F.3d 921, 924 (5th Cir. 2001); *Tapia Garcia,* 237 F.3d at 1221–22 (citing *United States v. Reyes–Castro,* 13 F.3d 377, 379 (10th Cir.1993)); *Ramsey v. INS,* 55 F.3d 580, 583 (11th Cir.1995) (per curiam); *Aragon,* 983 F.2d at 1312; *United States v. Dunn,* 946 F.2d 615, 620, 621 (9th Cir.1991). Moreover, the categorical approach is the BIA's traditional method of determining whether an offense constitutes a deportable

Furthermore, the categorical approach is especially appropriate in the current context where the relevant facts may be up to ten years old and may never have been developed in a trial court.[7]

## II. *Categorical Analysis of NYVTL § 1192.3*

■ In the instant case, upon a *de novo* review of the relevant criminal statute, we conclude that not all violations of NYVTL § 1192.3 are "by their nature" "crimes of violence" because risk of physical force is not a requisite element of the New York DWI offense.

NYVTL § 1192.3 provides, in its entirety, that "[n]o person shall operate a motor vehicle while in an intoxicated condition." Recently, in *People v. Prescott*, 95 N.Y.2d 655, 722 N.Y.S.2d 778, 745 N.E.2d 1000 (2001), the New York Court of Appeals clarified the nature of the state DWI offense and the breadth of the statute. The *Prescott* Court held that attempted DWI was not a legally cognizable offense distinct from the substantive crime because the crime of attempt is already encompassed within NYVTL § 1192.3. *See id.* at 782. The court stressed that:

> [T]he breadth of conduct prohibited by Vehicle and Traffic Law § 1192, as interpreted by our courts, is sweeping. Our courts have long recognized that the definition of operation is broader than that of driving and that " '[a] person operates a motor vehicle within the meaning of [the statute] when, in the vehicle, he intentionally does any act or

makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of the vehicle[.]' "

*Id.* (quoting *People v. Alamo*, 34 N.Y.2d 453, 459, 358 N.Y.S.2d 375, 315 N.E.2d 446 (quoting *Matter of Prudhomme v. Hults*, 27 A.D.2d 234, 237, 278 N.Y.S.2d 67)).

■ Thus, in New York, a defendant can be found guilty of driving while intoxicated even if he or she is asleep at the wheel of a car whose engine is not running and evidence is adduced at trial that the vehicle never moved. *See People v. Marriott*, 37 A.D.2d 868, 325 N.Y.S.2d 177, 178 (3d Dep't 1971). A person can also be found guilty of operating a vehicle while intoxicated without knowing how to operate the vehicle in question. *See Prescott*, 722 N.Y.S.2d at 782, 745 N.E.2d 1000. Indeed, the vehicle itself need not even be operative in order to sustain a conviction for operating it while intoxicated. *See People v. David "W"*, 83 A.D.2d 690, 442 N.Y.S.2d 278, 279 (3d Dep't 1981) (holding that testimony regarding the inoperability of a vehicle behind the wheel of which defendant was found drunk and slumped over was inadmissible because such testimony is irrelevant to the question of guilt under statute).

The aforementioned cases make clear that a person can be convicted under NYVTL § 1192.3 even when there is no risk that force may be used or that injury may result. We are at a loss to see how this minimum threshold, even if met on three separate occasions, satisfies the stat-

---

crime under the INA, including an aggravated felony, and, in turn, a crime of violence under § 16(b). *See In re Bahta*, Int. Dec. No. 3437, 2000 WL 1470462 (BIA Oct. 4, 2000) (discussing variety of cases); *In re Puente–Salazar, In re Sweetser*, Int. Dec. No. 3390, 1999 WL 311950 (BIA May 19, 1999); *In re Magallanes–Garcia* (quoting *Matter of Alcantar*, 20 I & N Dec. 801).

7. A felony DWI offense in New York requires two previous DWI convictions within the preceding ten years. Because many first-and second-time DWI convictions arise from guilty pleas, the record before the IJ will often be very spare and difficult to develop. *See* NYVTL § 1193(c)(ii).

utory definitions of an "aggravated felony" or a "crime of violence."

■ The government argues that the requisite minimum conduct required for a DWI conviction under *Prescott does* always present a "substantial risk that physical force ... may be used" because the proscribed conduct focuses on the defendant's intention, and an intention to drive while intoxicated, the government argues, always poses the risks inherent in drunk driving. We disagree. An intention to drive is not the same as driving. Just as many good intentions are crushed by reality, so too can reality felicitously crush bad intentions. Subsection 16(b) defines a "crime of violence" in terms of real, substantial risks and cannot support deportation based upon hypothetical harms.

### III. *Use of Physical Force*

Even if we were to accept the government's argument that NYVTL § 1192.3 is comparable in scope to § 16(b), we believe the language of § 16(b) fails to capture the nature of the risk inherent in drunk driving. This risk is, notoriously, the risk of an ensuing accident; it is not the risk that the driver will "use physical force" in the course of driving the vehicle. Indeed, in the context of driving a vehicle, it is unclear what constitutes the "use of physical force." The physical force used cannot reasonably be interpreted as a foot on the accelerator or a hand on the steering wheel. Otherwise, all driving would, by definition, involve the use of force, and it is hard to believe that Congress intended for all felonies that involve driving to be "crimes of violence."

The government likens, at different times, the "use of physical force" with speeding, crashing, harming others and/or possessing an out-of-control car. These interpretations tend to equate "physical force" with an accident. Under this defini-

tion, a drunk driver would not be "using" physical force unless he or she had an accident. This interpretation distorts language and our commonsense understandings insofar as an accident, by definition, is something that is neither planned nor foreseen—except perhaps in hindsight. Although an accident may properly be said to involve force, one cannot be said to *use* force in an accident as one might use force to pry open a heavy, jammed door.

In *United States v. Rutherford,* 54 F.3d 370 (7th Cir.1995), the Seventh Circuit came to the same conclusion. Analyzing the difference between the "use of force" and the "risk of injury" from a plain language point of view, the court concluded that while drunk driving involved "a serious potential risk of physical injury," it did not involve "use of physical force." *Id.* at 372–73. The court stated:

> [A] drunk driving accident is not the result of plan, direction, or purpose.... A drunk driver who injures a pedestrian would not describe the incident by saying he "used" his car to hurt someone. In ordinary English, the word "use" implies intentional availment.... No availment of force in order to achieve an end is present in a drunk driving accident. Thus under a pure plain language approach, one would be hard-pressed to argue that Rutherford's accident involved the use of force.

*Id.* (footnote omitted).

Indeed, the government struggles to avoid awkward language when describing an accident as the "use of physical force." The government writes that "it is undeniable that driving while intoxicated greatly increases the likelihood that one will inflict harm on others via the use of force," and that "the crashing of the drunk driver's automobile ... constitutes the force that is likely to be used." The government con-

ceals with its use of the passive voice what § 16(b) reveals in its clear and ordinary language: a crime of violence must involve the *application* of force.

While it may be true that all driving involves some risk of an accident and drunk driving increases that risk,[8] upon closer examination, this reasoning begs the question of whether an accident is something that can be referred to as involving the "use of physical force." Such an argument equates the use of physical force with harm or injury, thus returning the inquiry to the question of whether there is any material difference between the risk of the "use of physical force" and the "risk of injury."

## IV. *Risk of Injury v. Risk of Use of Physical Force*

The government argues that the difference, if any, between a "risk of injury" and a risk of the "use of physical force" is negligible. We disagree. There are many crimes that involve a substantial risk of injury but do not involve the use of force. Crimes of gross negligence or reckless endangerment, such as leaving an infant alone near a pool, involve a risk of injury without the use of force. Statutes criminalizing the use, possession and/or distribution of dangerous drugs and other controlled substances also underscore the fact that some criminal conduct may involve a substantial risk of injury or harm without at the same time involving the use of physical force. Other courts have also recognized the logical fallacy inherent in reasoning that simply because all conduct involving a risk of the use of physical force also involves a risk of injury then the converse must also be true. *See Chapa–*

*Garza,* 243 F.3d at 926; *United States v. Parson,* 955 F.2d 858, 866 (3d Cir.1992).

The United States Sentencing Guidelines recognized the difference between "use of force" and "injury" when it broadened the scope of its definition for "crimes of violence" under the career offender provision in § 4B1.2(a)(2). Before 1989, § 4B1.2(a)(2) referred to 18 U.S.C. § 16 for its definition of a "crime of violence." *See Parson,* 955 F.2d at 864. In 1989, the Sentencing Guidelines removed the reference to § 16 and instead defined a "crime of violence" by its resultant injury rather than by the use of force. *See id.* The current version of § 4B1.2(a)(2) provides:

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> . . .
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a)(2) (2000). We agree with the Fifth Circuit that this change counsels against interpreting "risk of the use of physical force" and "risk of injury" the same way. *See Chapa–Garza,* 243 F.3d at 926.

Moreover, our conclusion accords with that of the only other circuit that has reviewed *de novo* the question whether a felony DWI conviction constitutes a "crime of violence" under § 16(b). Analyzing the Texas DWI statute, the Fifth Circuit in *Chapa–Garza* held that convictions under the statute failed to satisfy the elements of § 16(b). *See* 243 F.3d at 927. The court reasoned that the word "use" as well as

---

**8.** We do not decide today whether a DWI offense fits into the definition of conduct in-

volving a "risk of injury" or a "risk of harm."

the phrase "in the course of committing the offense" suggested that § 16(b) contemplates only intentional conduct and "refers only to those offenses in which there is a substantial likelihood that the perpetrator will intentionally employ physical force .... not [to] an accidental, unintended event." 243 F.3d at 926.[9]

Of course, nothing in our decision today in any way underestimates the toll that drunk driving has taken on human life; it is an urgent, nationwide problem of staggering proportion. But by shoehorning such reprehensible conduct into criminal statutes that were not designed to hold it, we risk an equivalent harm of usurping federal and state legislative roles. We are reminded here of what the Supreme Court said years ago in the context of interpreting an immigration law providing for deportation on the basis of crimes of moral turpitude:

> [D]eportation is a drastic measure and at times the equivalent of banishment or exile. It is the forfeiture for misconduct of a residence in this country. Such a forfeiture is a penalty. To construe this statutory provision less generously to the alien might find support in logic. But since the stakes are considerable for the individual, we will not assume that Congress meant to trench on his freedom beyond that which is required by the narrowest of several possible meanings of the words used.

*Fong Haw Tan v. Phelan,* 333 U.S. 6, 10, 68 S.Ct. 374, 92 L.Ed. 433 (1948) (citation omitted).

## V. *Additional Arguments*

We have considered Dalton's arguments that under our recent decision in *St. Cyr v. INS,* 229 F.3d 406 (2d. Cir.2000) *aff'd,* —— U.S. ——, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), he is eligible for a cancellation of removal and that INA § 101(a)(43) violates his due process rights. We find these arguments to be without merit.

## CONCLUSION

For the foregoing reasons, we hold that a felony DWI conviction under NYVTL § 1192.3 does not amount to a "crime of violence" under 18 U.S.C § 16(b) for purposes of defining an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(F). Accordingly, we vacate the deportation order and remand for proceedings consistent with this opinion.[10]

---

9. In *Tapia Garcia,* the Tenth Circuit addressed the same question under Iowa law, but applied *Chevron* deference to affirm the BIA's deportation order. *See* 237 F.3d at 1220. Taking a categorical approach, the *Tapia Garcia* court declined to differentiate "risk of injury" from "use of force," reasoning that although the phrases "differ[ ] slightly ...", the well-documented danger inherent in drunk driving supports the conclusion that a DUI offense may also constitute a crime of violence under § 16(b)[.]" *Id.* at 1223.

In addition to finding *Tapia Garcia* inapplicable to our case on the basis of its more deferential standard of review, we also remain to be persuaded by the court's reasoning. The *Tapia Garcia* court cited to *United States v. Coronado–Cervantes,* 154 F.3d 1242, 1244 (10th Cir.1998), for the proposition that the language in § 16(b) and in the Sentencing Guidelines is functionally similar. *See id.* Although the *Coronado–Cervantes* court recognized that the definitions in § 16(b) and the Sentencing Guidelines differ, it nevertheless found that sexual contact with a minor always involves " 'a substantial risk that physical force will be used to ensure the child's compliance.' " *Id.* (quoting *Reyes–Castro,* 13 F.3d at 379). Thus, *Coronado–Cervantes* stands for the unremarkable proposition that where there is the risk of use of force, there is the risk of injury. Even if we concede the *Coronado–Cervantes* reasoning that all offenses involving a use of physical force also involve a risk of injury, it does not follow that all offenses involving a risk of injury also involve a use of force.

JOHN M. WALKER, JR., *Chief Judge*, dissenting:

Unlike the majority, I believe that New York's felony DWI statute, N.Y. Veh. & Traf. Law §§ 1192.3, 1193.1(c), creates a "crime of violence" as that term is defined in 18 U.S.C. § 16(b), and therefore I believe that Dalton was convicted of an "aggravated felony" within the meaning of 8 U.S.C. § 1101(a)(43)(F) that properly renders him subject to deportation pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii).

First, while I agree with the majority that § 16(b) directs our inquiry to the generic "nature" of the offense in question, and therefore that we must determine categorically whether the offense is a crime of violence without reference to the particulars of the appellant's conviction, *see ante* at 204–05(collecting cases) [Draft at 7–9], I do not agree that such categorical analysis compels the conclusion that New York's felony DWI offense is not a "crime of violence." Although New York courts have interpreted the DWI statute to allow conviction of one who intends to operate a vehicle that is nonetheless unable to move, *see, e.g., People v. David "W"*, 83 A.D.2d 690, 442 N.Y.S.2d 278, 279–80 (1981), one may always conjure up examples of how a criminal statute can be applied to cases where the defendant's conduct does not create a risk that force will be used. For instance, a defendant might be convicted of burglary notwithstanding that he entered through a wide-open door when no one was at home. *See, e.g.,* N.Y. Penal Law § 140.20 ("A person is guilty of burglary in the third degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein. Burglary in the third degree is a class D felo-

ny."). Such an offense still carries some risk that "force will be used" as § 16(b) requires, as where the police use force in the course of apprehending the defendant, but the risk there is by no means "substantial." Still, most would concede that burglary is a crime of violence. *See, e.g., United States v. Guadardo*, 40 F.3d 102, 103–05 (5th Cir.1994); S.Rep. No. 98–225, at 307, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3486–87 ("The definition [in § 16(b) would include] offenses such as burglary in violation of a State law ... inasmuch as such an offense would involve the substantial risk of physical force against another person or against the property."). Consequently, I believe the categorical analysis suggested by the majority requires a broader, common-sense view, one that contemplates the risks associated with the proscribed conduct in the mainstream of prosecutions brought under the statute. After all, it surely was the risk of injury from the use of force upon innocent victims by drunk drivers on the road that animated the legislation in the first place.

Second, I cannot agree with the majority's conclusion that driving while intoxicated does not involve "a substantial risk that physical force against the person or property of another may be used ." 18 U.S.C. § 16(b). Even accepting *arguendo* that the word "use" implies intentional availment, as the majority contends, driving inevitably involves intentional use of force: the driver necessarily intends to use mechanized force to propel the vehicle to its destination. In an accident, that force does not stop being "used"; but for the driver's use of force to propel the vehicle, the collision with another vehicle or a pedestrian would not have occurred. Accordingly, all driving involves *some* risk that "physical force may be used against

**10.** After this opinion was circulated to the members of this panel, we learned that the Seventh Circuit had handed down a decision which seems to support our position. *See Bazan Reyes v. INS*, 256 F.3d 600 (7th Cir. 2001).

the person or property of another." Driving while intoxicated, however, makes that risk "substantial" and therefore triggers § 16(b)'s definition of a crime of violence.

Moreover, that the offense requires two prior drunk driving convictions increases the attendant risk. Although the prior convictions do not increase the chance that the defendant will cause injury in driving drunk for the third time (they are independent events), the risk that injury will occur on one of three occasions is greater than on any one occasion considered alone. Consequently, the more drunk driving incidents incorporated into a single offense, the greater the risk of harm associated with that offense. Because New York's DWI statute requires multiple prior DWI convictions, the offense "by its nature" involves a substantial risk that harmful force will be used.

For the foregoing reasons, I respectfully dissent.