17-1567-ag
*Hylton v. Sessions*

# United States Court of Appeals
# for the Second Circuit

AUGUST TERM 2017
No. 17-1567-ag

ANTOINE L. HYLTON, A/K/A ANTOINE HYLTON

*Petitioner,*

*v.*

JEFFERSON B. SESSIONS III, UNITED STATES ATTORNEY GENERAL,

*Respondent.*

ARGUED: JUNE 27, 2018
DECIDED: JULY 20, 2018

Before:       JACOBS, RAGGI, and HALL, *Circuit Judges*:

Antoine Hylton, a Jamaican national, petitions for review of the order of the Board of Immigration Appeals, which found him ineligible for cancellation of removal because his prior state conviction for sale of marijuana in the third degree constituted an aggravated felony under the Immigration and Nationality Act.   The single issue on appeal is whether the minimum offense conduct under Hylton's statute of conviction, New York Penal Law ("NYPL") § 221.45, is necessarily punishable as a federal felony by the Controlled Substances Act. Because NYPL § 221.45 explicitly extends to the distribution of less than an ounce of marijuana without remuneration, it is punishable as a federal misdemeanor.

Hylton's crime of conviction is therefore not categorically an aggravated felony. We **GRANT** the petition, **VACATE** the opinion of the BIA, and **REMAND** for further consideration consistent with this opinion.

GERARDO ROMO, KYLE BARRON, Washington Square Legal Services, Inc., New York, NY (Nancy Morawetz, Washington Square Legal Services, Inc., New York, NY; Su Yon Yi, Queens Law Associates, Public Defenders, Forest Hills, NY, <u>on the brief</u>), *for Petitioner*.

ALEXANDER J. LUTZ, Trial Attorney, Office of Immigration Litigation, for Chad A. Readler, Acting Assistant Attorney General (Anthony C. Payne, Assistant Director, Office of Immigration Litigation, <u>on the brief</u>), Washington, D.C., *for Respondent*.

DENNIS JACOBS, *Circuit Judge*:

Antoine Hylton, a Jamaican national, petitions for review of the May 9, 2017 order of the Board of Immigration Appeals ("BIA"), which found him ineligible for cancellation of removal because his prior state conviction for sale of marijuana in the third degree constituted an aggravated felony under the Immigration and Nationality Act ("INA"). The single issue on appeal is whether the minimum offense conduct under Hylton's statute of conviction, New York Penal Law ("NYPL") § 221.45, is necessarily punishable as a federal felony by the Controlled Substances Act ("CSA"). See <u>Martinez v. Mukasey</u>, 551 F.3d 113, 118-19 (2d Cir. 2008).

"If a noncitizen's conviction for a marijuana distribution offense fails to establish that the offense involved either remuneration or more than a small amount of marijuana," the offense is punishable as a federal misdemeanor.

Moncrieffe v. Holder, 569 U.S. 184, 206 (2013) (referencing 21 U.S.C. § 841(b)(4), which states that notwithstanding federal law making trafficking in any quantity of marijuana a felony, "distributing a small amount of mari[j]uana for no remuneration shall be treated" as a misdemeanor). The CSA does not define "a small amount." We now hold that an ounce, or roughly 30 grams (28.35 in point of fact), is a "small amount" of marijuana within the meaning of 21 U.S.C. § 841(b)(4). Our ruling is in keeping with the decisions of our sister circuits, the commentary of the BIA, the structure of the relevant federal statutes, and the principle of personal use. Because NYPL § 221.45 explicitly extends to the distribution of less than an ounce of marijuana without remuneration, it is punishable as a federal misdemeanor. See Moncrieffe, 569 U.S. at 206; Castro Rodriguez, 25 I. & N. Dec. 698, 703 (2012). The BIA decision rested on the observation that there was no "realistic probability" that New York would apply NYPL § 221.45 to conduct outside the generic federal felony. That was error because the state statute on its face punishes conduct classified as a federal misdemeanor.

Hylton's crime of conviction is therefore not categorically an aggravated felony. Hylton is removable, but not precluded from equitable relief at the discretion of the immigration judge ("IJ"). The IJ weighed equities and granted cancellation of removal, a ruling that the BIA did not reach, having found ineligibility for that relief. We **GRANT** the petition, **VACATE** the opinion of the BIA, and **REMAND** for the BIA to review the IJ's grant of cancellation of removal.

## I

Antoine Hylton was admitted to the United States as a lawful permanent resident in 1989. He is married to a U.S. Citizen and has two U.S. citizen brothers, a U.S. citizen mother, and three U.S. citizen-children whom he supports. In 2011, Hylton was convicted of criminal possession of marijuana in the third degree and criminal sale of marijuana in the third degree. See NYPL §§ 221.20, 221.45. He was detained by the Department of Homeland Security ("DHS") in 2013 and charged as removable for having been convicted of an aggravated felony drug trafficking offense. See 8 U.S.C. § 1227(a)(2)(A)(iii).

3

When Hylton appeared before the IJ, he conceded removability, but challenged the aggravated felony charge in order to become eligible for cancellation of removal. The IJ ruled as a matter of law that Hylton was not an aggravated felon and made factual findings that Hylton was entitled to relief from deportation. Specifically, the IJ conducted an analysis under the categorical approach, concluded that the minimum conduct criminalized under NYPL § 221.45 includes the non-remunerative transfer of 30 grams or less of marijuana, and ruled accordingly that this conduct fell outside the class of aggravated felony that constitutes "illicit trafficking in a controlled substance." 8 U.S.C. § 1101(a)(43)(B). The IJ then weighed the discretionary factors to determine whether Hylton warranted equitable relief. In view of Hylton's lengthy residence and significant family ties, the IJ concluded that the "positives outweigh[ed] the negatives" and granted cancellation of removal. CAR 121.

The Government appealed to the BIA. Reviewing the IJ's aggravated felony ruling *de novo*, the BIA held that Hylton's conviction "does not fall within the misdemeanor exception contained at 21 U.S.C. § 841(b)(4)" and is therefore an aggravated felony. CAR 5. Instead of conducting an analysis under the categorical approach, the BIA reasoned that "there is not a realistic probability that New York would apply NYPL § 221.45 to conduct that falls outside the generic definition of a felony under the CSA." Id. at 6. Because the BIA ordered Hylton removed as an aggravated felon, it did not reach the IJ's grant of cancellation of removal.

Hylton timely petitioned this Court for review. This Court's limited jurisdiction over Hylton's petition of the BIA order is to review "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D). "Whether a conviction qualifies as an aggravated felony is a question of law, which we review *de novo*." Martinez, 551 F.3d at 117 (internal citation omitted).

## II

"When the Government alleges that a state conviction qualifies as an 'aggravated felony' under the INA, we generally employ a 'categorical approach' to determine whether the state offense is comparable to an offense listed in the

INA." Moncrieffe, 569 U.S. at 190; see Obeya v. Sessions, 884 F.3d 442, 447 n.4 (2d Cir. 2018). "Under the categorical approach, courts identify the minimum criminal conduct necessary for conviction under a particular statute" by "looking only to the statutory definitions--i.e., the elements--of the offense, and not to the particular underlying facts." United States v. Hill, 890 F.3d 51, 55 (2d Cir. 2018) (quoting United States v. Acosta, 470 F.3d 132, 135 (2d Cir. 2006) and Descamps v. United States, 570 U.S. 254, 261 (2013) (brackets omitted)). "Because we examine what the state conviction necessarily involved, not the facts underlying the case, we must presume that the conviction 'rested upon nothing more than the least of th[e] acts' criminalized, and then determine whether even those acts are encompassed by the generic federal offense." Moncrieffe, 569 U.S. at 190-91 (quoting Johnson v. United States, 559 U.S. 133, 137 (2010)). "The very basis of the categorical approach is that the *sole* ground for determining whether an immigrant was convicted of an aggravated felony is the minimum criminal conduct necessary to sustain a conviction under a given statute." Martinez, 551 F.3d at 121 (citing Dalton v. Ashcroft, 257 F.3d 200, 204 (2d Cir. 2001)) (emphasis in original).

The aggravated felony at issue is illicit trafficking in a controlled substance. See 8 U.S.C. § 1101(a)(43)(B); 18 U.S.C. §§ 924(c)(2), 3559(a)(5). When the Government classifies a noncitizen as an aggravated felon on the basis of a drug trafficking offense, the categorical inquiry is "whether the record of conviction of the predicate offense necessarily establishes conduct that the CSA, on its own terms, makes punishable as a felony." Moncrieffe, 569 U.S. at 197-98 (citing Carachuri-Rosendo v. Holder, 560 U.S. 563, 581 (2010)); see Lopez v. Gonzales, 549 U.S. 47, 60 (2006) ("a state offense constitutes a felony punishable under the [CSA] only if it proscribes conduct punishable as a felony under that federal law.") (internal quotation marks omitted); Harbin v. Sessions, 860 F.3d 58, 68 (2d Cir. 2017) ("An alien's actual conduct is irrelevant to the inquiry, as the adjudicator must presume that the conviction rested upon nothing more than the least of the acts criminalized under the statute.").

"We begin with the relevant conduct criminalized by the CSA." Moncrieffe, 569 U.S. at 192. Marijuana distribution is a CSA offense that can be either a felony (see 21 U.S.C. §§ 841(a), 841(b)(1)) or a misdemeanor (see 21 U.S.C.

5

§ 841(b)(4)).   "[A]ny person who violates" the CSA "by distributing a small amount of marijuana for no remuneration" has committed a misdemeanor.   21 U.S.C. § 841(b)(4).   As we have already observed, "[i]f a noncitizen's conviction for a marijuana distribution offense fails to establish that the offense involved either remuneration or more than a small amount of marijuana, the conviction is not for an aggravated felony under the INA."   Moncrieffe, 569 U.S. at 206; see, e.g., Guevara-Solorzano v. Sessions, 891 F.3d 125, 132 (4th Cir. 2018).

The CSA does not define a "small amount" of marijuana.   Still, several circuits have held that 30 grams is a "small amount" within the meaning of 21 U.S.C. § 841(b)(4).[1]   See Ming Wei Chen v. Sesions, 864 F.3d 536, 538, 540 (7th Cir. 2017) (holding that a "shade above 30 grams" would constitute a "small amount" of marijuana, and consequently, noncitizen petitioner was not an aggravated felon because his conviction, which proscribed the nonremunerative distribution of any amount greater than 30 grams, captured conduct within the CSA's misdemeanor provision); Steele v. Blackman, 236 F.3d 130, 137 (3d Cir. 2001) (holding that 30 grams is a small amount of marijuana); accord Jeune v. Attorney General, 476 F.3d 199, 205 (3d Cir. 2007).   And the BIA has posited 30 grams as a "useful guidepost" for a "small amount" of marijuana.   See Castro Rodriguez, 25 I. & N. Dec. at 703; Moncrieffe, 569 U.S. at 194 n.7 (citing Castro Rodriguez, 25 I. & N. Dec. at 703).

The BIA in Castro Rodriguez located support for its 30-gram figure in a possession subsection of the INA that exempts from the definition of a "controlled substance" offense the possession of "30 grams or less of marijuana." 8 U.S.C. § 1227(a)(2)(B)(i).   Section 1227(a)(2)(B)(i) of the INA and 21 U.S.C. § 841(b)(4) share a similar function within their respective statutory schemes: each serves as a reference point for the immigration consequence of a state drug conviction.   See Mellouli v. Lynch, 135 S.Ct. 1980, 1984 (2015) (explaining that a

---

[1]  As a penal statute, Section 841(b)(4) must state its proscriptions with sufficient clarity to be understood both by citizens obliged to obey them and officials charged with their enforcement.   See Kolender v. Lawson, 461 U.S. 352, 353 & n.1 (1983) (holding state misdemeanor statute unconstitutionally vague within the meaning of the Due Process Clause).

noncitizen's state conviction is not a deportable offense if the state statute punishes conduct defined by 8 U.S.C. § 1227(a)(2)(B)(i)).   So, as a matter of statutory construction, there is some force to assigning 30 grams as a benchmark "small amount" to align the treatment of marijuana quantities in the CSA to the INA.   Cf. FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000).

There are other, more intuitive reasons why the range 25 to 30 grams is deemed "small."   (1) One ounce equals 28.35 grams, an equivalence noted by the Fourth Circuit when it recently suggested that a statute that criminalizes the transfer of 30 grams of marijuana for no remuneration is not an aggravated felony.   See Guevara-Solorzano, 891 F.3d at 132 (observing that 30 grams, the amount noted in Moncrieffe, is approximately one ounce).   (2) In drafting the CSA's marijuana misdemeanor provision, Congress intended to include such amounts that suggest personal use and social sharing, as opposed to large-scale commercial dealing.   See United States v. Outen, 286 F.3d 622, 637-38 (2d Cir. 2002); 21 U.S.C. § 841(b)(4).

We are convinced by the logic of this approach.   We now hold that an ounce (roughly 30 grams) or less of marijuana is a "small amount" within the meaning of 21 U.S.C. § 841(b)(4).[2]

---

[2] The BIA relied on dicta in Catwell v. Atty' Gen. of U.S., 623 F.3d 199 (3d Cir. 2010), as support for limiting a "small amount of marijuana" to "no more than one or two marijuana cigarettes."   Id. at 208-09.   The BIA's reliance on Catwell is unpersuasive.   First, the BIA's citation to Catwell departs without explanation from the agency's own observation that 30 grams is a "useful guidepost." Second, the Catwell court's holding was that 120.5 grams of marijuana was not a "small amount," id. at 208, a weight four times the amount at issue in this case, which would be punishable under NYPL § 221.50 as sale in the second degree, not sale in the third degree under NYPL § 221.45, as in Hylton's case.   The Seventh Circuit found Catwell similarly unhelpful, because 30 grams is far more akin to the scenarios envisioned by Congress in drafting 21 U.S.C. § 841(b)(4) than 120.5 grams.   Finally, the Third Circuit has already held that 30 grams is a "small amount."   See Steele, 236 F.3d at 137-38.   It is odd, given this precedent, that the

We must next identify the minimum conduct punishable under the state statute of conviction, NYPL § 221.45.   Acosta, 470 F.3d at 135.   The elements of New York criminal sale of marijuana are familiar to this Court.   See Martinez, 551 F.3d at 119 (holding that criminal sale of marijuana in the fourth degree is not an aggravated felony).   Hylton's offense, sale in the third degree, makes it a crime to "knowingly and unlawfully sell[] one or more preparations, compounds, mixtures or substances containing marijuana [if] the preparations, compounds, mixtures or substances are of an aggregate weight of more than twenty-five grams."   NYPL § 221.45.[3]   "[T]he definition of 'sale' under New York law is a broad one that includes any form of transfer of a controlled substance, whether or not the transfer was for money."   Martinez, 551 F.3d at 119 (quoting People v. Starling, 85 N.Y.2d 509 (1995)); see NYPL § 220.00(1) (defining "sell" as "to sell, exchange, give or dispose of to another, or to offer or agree to do the same").

The minimum offense conduct under NYPL § 221.45 is therefore the nonremunerative transfer of anything over 25 grams of a substance containing marijuana.   See Martinez, 551 F.3d at 121 (holding that the minimum conduct punishable as criminal sale of marijuana in the fourth degree involved the nonremunerative transfer of two grams of marijuana); see also Ming Wei Chen, 864 F.3d at 538 (explaining that the minimum offense conduct under a marijuana distribution statute penalizing weight over 30 grams is "a hair over 30 grams").

Comparing the minimum chargeable conduct under NYPL § 221.45 to the elements of CSA marijuana distribution, we conclude that the state statute punishes offenses that would not amount to a federal felony.   See Harbin, 860

BIA would infer from Catwell that the Third Circuit would not consider 25 grams a "small amount" of marijuana.

[3] Criminal sale in the *second* degree, NYPL § 221.50, criminalizes, *inter alia*, the sale of more than four ounces, or roughly 113.4 grams.   Martinez, 551 F.3d at 120.   In other words, NYPL § 221.45 covers the transfer of substances containing marijuana with an aggregate weight of 25 to 113.4 grams.

F.3d at 68.   NYPL § 221.45 punishes the distribution of "small amounts" of marijuana, and remuneration is not an element of the conviction.   By its plain language, NYPL § 221.45 punishes conduct that is classified as a misdemeanor under 21 U.S.C. § 841(b)(4).   "As the categorical approach requires, we look no further than to the fact that [Hylton's] conviction could have been for precisely the sort of nonremunerative transfer of small quantities of mari[j]uana that is only a federal misdemeanor[.]"   Martinez, 551 F.3d at 120.

Hylton's crime of conviction is not categorically an aggravated felony, and he is not an aggravated felon.   Moncrieffe, 569 U.S. at 194-95 ("Moncrieffe's conviction could correspond to either the CSA felony or the CSA misdemeanor. Ambiguity on this point means that the conviction did not 'necessarily' involve facts that correspond to an offense punishable as a felony under the CSA. Under the categorical approach, then, Moncrieffe was not convicted of an aggravated felony.").

## III

The BIA did not conduct an elements-based categorical inquiry; instead, it applied a "realistic probability" test.   This was error.   By its terms, NYPL § 221.45 punishes the transfer without remuneration of less than an ounce of marijuana, which is not necessarily felonious under the CSA.   The realistic probability test is obviated by the wording of the state statute, which on its face extends to conduct beyond the definition of the corresponding federal offense. See Mathis v. United States, 136 S. Ct. 2243, 2251 (2016) ("[T]he elements of Mathis's crime of conviction ... cover a greater swath of conduct than the elements of the relevant [federal] offense.   Under our precedents, that undisputed disparity resolves this case."); see also United States v. Titties, 852 F.3d 1257, 1275 (10th Cir. 2017) (interpreting Mathis).

The requirement that a defendant show a "realistic probability" that "the State would apply its statute to conduct that falls outside the generic definition of a crime" operates as a backstop when a statute has indeterminate reach, and where minimum conduct analysis invites improbable hypotheticals.   Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007).   "Legal imagination" may conjure up

scenarios that lurk in the indeterminacy of statutory wording; but if so, courts can require that the defendant "at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." Id. There is no such requirement, however, "when the statutory language itself, rather than the application of legal imagination to that language, creates the realistic probability that a state would apply the statute to conduct beyond the generic definition." Ramos v. U.S. Att'y Gen., 709 F.3d 1066, 1072 (11th Cir. 2013) (internal quotation marks omitted); see Singh v. Att'y Gen., 839 F.3d 273, 286 n.10 (3d Cir. 2016) ("Here, the elements of the crime of conviction are not the same as the elements of the generic federal offense. The Supreme Court has never conducted a 'realistic probability' inquiry in such a case."); Chavez-Solis v. Lynch, 803 F.3d 1004, 1010 (9th Cir. 2015) ("[W]hen a state statute's greater breadth is evident from its text, a petitioner need not point to an actual case applying the statute of conviction in a non-generic manner.") (internal quotation marks and citation omitted); see also Swaby v. Yates, 847 F.3d 62, 66 & n.2 (1st Cir. 2017) (rejecting the Government's "surprising view that, in applying the categorical approach, state law crimes should not be given their plain meaning).

Since the elements of NYPL § 221.45 are broader than the corresponding federal felony, Hylton has satisfied any requirement to show that "New York would apply its statute to conduct that falls outside" the definition of a federal felony, and within the federal misdemeanor provision. Duenas-Alvarez, 549 F.3d at 193; see Lopez, 549 U.S. at 60; Mathis, 136 S. Ct. at 2251; see also Jean-Louis v. Att'y Gen., 582 F.3d 462, 481 (3d Cir. 2009) (no realistic probability inquiry when the statute's "elements ... are clear, and the ability of the government to prosecute a defendant under [the statute] is not disputed"); United States v. Aparicio-Soria, 740 F.3d 152, 158 (4th Cir. 2014) (en banc) ("We do not need to hypothesize about whether there is a 'realistic probability' that Maryland prosecutors will charge defendants engaged in [the broader conduct]; we know that they can because the state's highest court has said so.").

There are cases in which a separate realistic probability inquiry remains necessary because the elements of the state statute alone do not provide sufficient guidance on its application. For example, courts have modified the

10

categorical approach to define the outer limits of a "crime of moral turpitude." Mata-Guerrero v. Holder, 627 F.3d 256, 260 (7th Cir. 2010). And, in defining state offenses as "crimes of violence" under the Armed Career Criminal Act ("ACCA"), courts often look to case law to determine whether a predicate state crime satisfies the "violent force" requirement of United States v. Johnson, 559 U.S. 133 (2010). See Hill, 890 F.3d at 57-59; United States v. Jennings, 860 F.3d 450, 457-61 (7th Cir. 2017). This is not such a case.

The Government relies on past BIA rulings such as Matter of Ferreira, 26 I. & N. Dec. 415 (BIA 2014) to argue that we should look beyond what the statute criminalizes on its face and undertake a more demanding and particular inquiry. See also United States v. Castillo-Rivera, 853 F.3d 218 (5th Cir. 2017) (en banc). Putting aside the practical challenges of implementing the Government's approach (which are considerable), it finds little purchase in Supreme Court precedent or the law of this Circuit. Duenas-Alvarez does not require the BIA to conduct a separate realistic probability test in a case like this. Duenas-Alvarez dealt with a specific aiding-and-abetting theft statute, in which the boundaries of the offense conduct were ill-defined and the court was tasked with an interpretive dilemma. 549 U.S. at 187, 193-94. Since NYPL § 221.45 presents no such vagaries, the "sensible caution against crediting speculative assertions regarding the potentially sweeping scope of ambiguous state law crimes has no relevance to a case like this." Swaby, 847 F.3d at 66. By demanding that Hylton produce old state cases to illustrate what the statute makes punishable by its text, "the Government's argument misses the point of the categorical approach and 'wrenches the Supreme Court's language in Duenas-Alvarez from its context.'" Aparicio-Soria, 740 F.3d at 157 (internal quotations marks and citation omitted).

A pair of recent Supreme Court opinions clarified that, in applying the categorical approach, an unambiguous state statute can be broader on its face than its federal counterpart. See Mellouli, 135 S. Ct. at 1990 ("the Government's construction of the federal removal statute stretches to the breaking point, reaching state-court convictions ... in which no controlled substance as defined [in the federal code] figures as an element of the offense") (internal quotation marks and citation omitted); Mathis, 136 S. Ct. at 2251 (no realistic probability test considered when the state statute "cover[ed] a greater swath of conduct" by its

11

terms than the ACCA).   This circuit likewise applies the categorical approach to a controlled substance offense by comparing the conduct captured by the state statute to the elements of the CSA crime without resort to a "realistic probability" test or a catalog of state court decisions.   Harbin, 860 F.3d at 68 (concluding that a New York conviction is not an aggravated felony because the state statute, by its terms, punishes conduct that is not criminal under the CSA); Obeya, 884 F.3d at 447 n.4.   When the state law is facially overbroad, "we look no further[.]" Martinez, 551 F.3d at 120.

Other circuits have registered nearly unanimous disagreement with the approach taken by the BIA and urged by the Government in this case.[4]   That approach faces consistent judicial hostility because it is fundamentally inconsistent with formal categorical analysis (as opposed to, say, the modified categorical approach), which resists placing a supplementary, individualized burden on the noncitizen petitioner.   See Martinez, 551 F.3d at 121 ("The Government further attempts to avoid a straightforward application of the categorical approach by arguing that it was Martinez's burden to prove that his state conviction would be punishable under 21 U.S.C. § 841(b)(4), and hence not be an aggravated felony.   This argument is unavailing.").   In consensus with the majority of our sister circuits, we again decline to impose such a burden here.

## IV

Our conclusion that NYPL § 221.45 is not an "aggravated felony" under 8 U.S.C. § 1227(a)(2)(A)(iii) does not foreclose removal for a noncitizen convicted of

---

[4]  See Swaby v. Yates, 847 F.3d 62, 66 (1st Cir. 2017); Jean–Louis v. Att'y Gen., 582 F.3d 462, 481 (3d Cir. 2009); United States v. Aparicio–Soria, 740 F.3d 152, 158 (4th Cir. 2014) (en banc); United States v. Lara, 590 F. App'x 574, 584 (6th Cir. 2014); Ming Wei Chen v. Sessions, 864 F.3d 536, 538 (7th Cir. 2017); Ortiz v. Lynch, 796 F.3d 932 (8th Cir. 2015); Chavez-Solis v. Lynch, 803 F.3d 1004, 1010 (9th Cir. 2015); United States v. Titties, 852 F.3d 1257 (10th Cir. 2017); Ramos v. U.S. Att'y Gen., 709 F.3d 1066, 1071–72 (11th Cir. 2013); but see Castillo-Rivera, 853 F.3d 218 (5th Cir. 2017) (upholding the Government's "realistic probability" inquiry to assess whether a felony-firearm possession statute is an aggravated felony).

that crime; NYPL § 221.45 is indisputably a deportable offense.  All our holding achieves is to leave open the possibility of equitable relief in the most deserving cases, as Congress intended when it bifurcated *removability* from *cancellation of removal*, and vested immigration judges with discretionary powers.  This critical distinction informs our serious and careful approach to the task of determining whether a state offense qualifies as an aggravated felony, a label of substantial consequence.

The IJ below saw fit to grant Hylton such discretionary relief in view of significant ameliorating factors.  The agency does not apply a categorical approach in weighing cancellation of removal.  There, the IJ and BIA may certainly take the severity of an alien's particular conduct into account.  The BIA's review of this question was short-circuited by its conclusion that Hylton's crime of conviction was an aggravated felony.  We therefore remand to give the BIA the opportunity to decide whether the IJ properly exercised its discretion to grant cancellation of removal.

## CONCLUSION

For the foregoing reasons, we hereby **GRANT** the petition, **VACATE** the opinion of the BIA, and **REMAND** for the BIA to review the grant of cancellation of removal.