# In the
# United States Court of Appeals
## For the Seventh Circuit
———————

No. 06-3228

ARTHUR G. BAKARIAN,

*Petitioner*,

*v.*

MICHAEL B. MUKASEY, Attorney General
of the United States,

*Respondent.*

———————

On Petition for Review of an Order
of the Board of Immigration Appeals.
No. A43 003 461

———————

ARGUED MAY 29, 2008—DECIDED SEPTEMBER 4, 2008

———————

Before FLAUM, MANION, and EVANS, *Circuit Judges.*

MANION, *Circuit Judge.*    Arthur Bakarian, a native of the former Soviet Union, was charged with being removable as having been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct under Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"). Bakarian filed for cancellation of removal and waiver of inadmissibility.

The Immigration Judge ("IJ") denied Bakarian's application, and the Board of Immigration Appeals ("BIA") affirmed. Bakarian petitions this court for review, and we DENY his petition for review.

## I.

On June 9, 2005, the Department of Homeland Security ("DHS") initiated removal proceedings against Bakarian by filing a Notice to Appear in immigration court, charging him with removability under 8 U.S.C. § 1227(a)(2)(A)(ii), as an alien convicted of two or more crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. The Notice alleged that Bakarian was a native and citizen of Ukraine who was admitted to the United States on or about May 25, 1993, as an immigrant. The Notice continued to list four separate convictions for forgery, intimidation of a victim, and two thefts of property, noting that those "crimes did not arise out of a single scheme of criminal misconduct."

Bakarian appeared before the IJ on September 6, 2005, and admitted, while under oath, the allegations set forth in the Notice. Bakarian stated that he first came to the United States in 1989, then went back to Moscow to study, and received his permanent resident visa in 1993. The IJ then went through each of the four convictions listed on the notice. The first was a forgery conviction from a Wisconsin state court on November 13, 2003, and Bakarian explained that this offense involved a stolen check. The second was a November 13, 2003, Wisconsin state court conviction for the offense of "Intimidate Victim/Dissuade

Reporting," which Bakarian stated occurred while he was out on bond on the forgery charge. He violated one of the conditions of his bond, which was not to have contact with the victims. The third conviction was a September 25, 1996, conviction from the municipal court in Los Angeles County, California for theft on September 18, 1996. The final conviction was also a Los Angeles County theft conviction for a theft on August 3, 1996. Regarding the first of these thefts, Bakarian stated that he had left his father's house and was hungry so he stole some meat, and the second theft he stole vodka. In an attempt to ascertain whether Bakarian was eligible for cancellation of removal as a permanent resident, the IJ questioned Bakarian about when he entered the country. The IJ gave Bakarian an application to file for cancellation of removal and directed Bakarian to fill out the application and bring it back to the IJ on September 14, 2005. The IJ also requested from DHS a copy of Bakarian's immigrant visas, evidence showing that Bakarian was first here in 1989, and the government's position on whether Bakarian was eligible for cancellation of removal. The IJ continued the hearing until September 14, 2005.

On September 14, 2005, Bakarian again appeared before the IJ, and this time he submitted an application for cancellation of removal. According to his application for cancellation of removal, Bakarian entered the United States on November 15, 1987, as a B-2 visitor, and left that same year to return to the Soviet Union. Bakarian also stated on his application that he came back to the United States on August 20, 1989, as a lawful permanent resident. However, documentary evidence from DHS

established that he did not come back into this country until March 5, 1990. In response to the IJ's inquiry, the government stated that it had no record of Bakarian obtaining residency in 1989. Despite the 1990 date on his immigrant visa and no documentation of an entry into the United States in 1989, Bakarian insisted to the IJ that his first entry into the United States as a lawful permanent resident took place in 1989. At some point after attaining lawful permanent residence status, Bakarian testified that he returned to Moscow, where his passport had been stolen. Bakarian testified that he got his replacement green card in 1992 and returned to the United States in 1993. Towards the end of the hearing, Bakarian requested that his case be transferred to Los Angeles, California, where he stated his father was in the hospital, paralyzed after a heart attack. The IJ responded:

> Sir, here's the difficulty you face. In order to be eligible for cancellation of removal, you have to have resided in the United States for seven years after a lawful admission and prior to committing any deportable offenses. Now, if you got your resident status in 1989, you would have to show that you have a clean record for seven years after that even to apply for cancellation of removal. The Government attorney is contending that you didn't get your resident status until 1990, and your conviction records show that you were convicted of theft in August of '96 and September of '06, and you would not have accumulated the seven years necessary to apply for cancellation of removal. So it's very critical to try to come up with some evidence to show whether you really got

your visa in 1989 or was it the year [1990], because the Government records that they have submitted to the Court today show that you got your residence in 1990.

The IJ had found that Bakarian was deportable because of his criminal record, and told Bakarian that he "thought you might be eligible to apply for cancellation of your removal, and that's why I provided you that application, but if you don't have seven years in the United States prior to commission of your criminal offense, then you would not be eligible for cancellation of removal, and the record shows that you do not have seven years." The IJ asked Bakarian if he had an attorney, and Bakarian responded that he did not and was not eligible for representation from legal aid. The IJ then stated,

What I'm going to do is find that you're not eligible to apply for cancellation of removal, because you can't meet the requirements for that benefit. And what I'll do is I'll just dictate a decision. I'm going to have the officer fax your application to your Court. And then you will decide whether or not you want to appeal my decision or not. Now, you get to designate to which country you would be deported to, but if that country won't accept you, then alternatively you will be deported to the Ukraine.

The IJ then notified Bakarian of various options that he might pursue to seek a waiver of removal. The IJ set the next hearing for September 27, 2005, on Bakarian's application to transfer his case to Los Angeles, his eligibility for waiver of removal under Section 212(c) of the INA, and whether his eligibility for cancellation of removal "is going to be held."

On September 27, 2005, the IJ reconvened Bakarian's hearing. The IJ noted that the government had presented two immigrant visas for Bakarian: one dated March 5, 1990, and a second dated May 25, 1993. Bakarian stated that he got a stamp in his passport from the United States embassy in Moscow in August 1989 and that passport had been stolen. In response to the IJ's query, Bakarian stated that he did not remember when he came into the United States. Bakarian did acknowledge that the document stating that the first time he entered the United States in 1990 was right, but stated that he came as a visitor in 1987 staying for six or seven months. Bakarian testified that he then went back to the Soviet Union to finish some business there for two months and then returned to the United States as a visitor for another six months. (He had not testified to these departures at the prior hearing nor listed them on his application for cancellation of removal.) Bakarian stated that he left the United States again in 1989 to go back the Soviet Union for a month and while he was there he got a permanent resident visa after his father, who was living in the United States, applied for one for him.

Bakarian stated that from 1990, he stayed in the United States until 1992, at which time he returned to Russia for his grandmother's funeral. Bakarian then came back to the United States in May 1993. The IJ noted that on his application Bakarian did not list the various departures about which he testified at the hearings. When the IJ inquired about their absence from the form, Bakarian stated that his English was not so good, and the IJ rescheduled the hearing for a time when a Russian interpreter could be present to assist Bakarian.

Bakarian again appeared before the IJ on November 22, 2005, and this time an interpreter was present. The IJ reviewed the documentary evidence with Bakarian, which included documents relating to his four criminal convictions, two immigrant visas, his application for removal, and an affidavit from his father. (Bakarian's father's affidavit stated that Bakarian "is in fact a Permanent Resident of the United States of America since 1989.") There was a visa issued on January 18, 1990, which was stamped on March 3, 1990, designating that Bakarian was a permanent resident. The IJ rejected Bakarian's contention that a separate faxed form indicated that Bakarian entered the United States as a permanent resident in 1989, particularly in light of the January 18, 1990 application date of immigrant visa. Bakarian stated that he entered this country five to six times, including in 2000 and in 2002; 2002 was the last time he entered the United States before removal proceedings commenced. Bakarian testified that he first came to the United States in 1987 and his later returns were in 1989, 1992 or 1993, and 1994. While he was in Russia in 1992 (when Bakarian contends that his documents were stolen), his father filed a document on April 10, 1992, which listed Bakarian's address as Odessa, Ukraine.

At the hearing, the IJ concluded that there was no evidence to substantiate Bakarian's claim that he had entered the United States as permanent resident in 1989, but found that Bakarian assumed that status in 1990. Moreover, the IJ noted that Bakarian had some significant absences from the United States since 1990: a year from 1992 to 1993, a month and a half in 1994, several

months in 2000, and several months in 2002. The IJ noted that Bakarian had been a permanent resident for more than five years and continued, "You also have to establish that you have been continuously physically present in the United States for seven years after a lawful admission to the United States . . . and that date that that ends would be the date that you committed an offense which would subject you to being removed from the United States." After reviewing his Los Angeles convictions, the latest being September 18, 1996, the IJ determined that was the cut-off date of his permanent residence period. Because he found that Bakarian's status as a permanent resident did not commence until March 1990, the IJ concluded that Bakarian could not "establish seven years' continuous physical presence, and therefore, cannot establish that [he was] statutorily eligible for cancellation of removal."

The IJ proceeded to explain other forms of relief that might be available to Bakarian after he indicated that his father was going to file a visa petition on his behalf. The IJ scheduled another hearing which was held on December 14, 2005. When Bakarian appeared for the December 14 hearing, his father had not yet filed a subsequent visa petition, and the IJ closed the hearing.

On April 10, 2006, the IJ issued a written decision and order. In his order, the IJ stated, "In the instant case, the respondent would satisfy the continuous residence requirement [ ] if he establishes that he resided in the United States continuously for 7 years after having been admitted in any status." The IJ noted that he previously

found that Bakarian's three theft convictions in 1996 constituted crimes involving moral turpitude, thereby ending Bakarian's continuous residence on August 8, 1996, the date of the second theft. The IJ continued, "[i]f the offense was committed within 7 years of respondent's admission to the United States, the respondent cannot establish the required continuous residence."

In his order, the IJ rejected Bakarian's position that his continuous residence began in 1987 when he first visited, stating "[a]ccording to his testimony, respondent went back and forth to the USSR several times for months at a time and did not come to reside in the United States until 1990." The IJ also rejected Bakarian's contention that he became a lawful permanent resident in 1989 because the documentary evidence listed the date as March 5, 1990, and Bakarian's father's visa application for him was dated November 1989. The IJ ultimately found that Bakarian's continuous residence did not begin until 1993 because Bakarian resided in Russia in 1992 and 1993. However, even crediting Bakarian with his continuous residence commencing in March 1990, the IJ concluded that Bakarian failed to meet the seven-year continuous residence requirement because the period ended on August 8, 1996.

The IJ also concluded that Bakarian was not eligible for a waiver of removal pursuant to Section 212(c) of the INA because he had entered a guilty plea after Section 212(c) had been repealed. The IJ also addressed Bakarian's application for waiver of removal pursuant to § 212(h) of the INA as a son of a United States citizen "who can

establish that his removal would result in extreme hard-
ship to [his father] and that the relief is warranted as a
matter of discretion." The IJ denied the waiver because
Bakarian did not have the requisite approved visa peti-
tion, even after the IJ had granted Bakarian a continu-
ance and gave him specific instructions on what he
needed to do in order to be eligible for a waiver under
§ 212(h).

Bakarian appealed to the BIA arguing that his 1996
convictions did not constitute crimes involving moral
turpitude, and that he had resided in the United States in
excess of seven years, thereby qualifying him for cancella-
tion of his 2003 convictions as well as waiver of his 1996
convictions. The BIA rejected Bakarian's arguments. It
found that his 1996 convictions were crimes involving
moral turpitude and agreed with the IJ that Bakarian had
failed to establish continual residence for seven years.
Bakarian also asserted that the IJ violated his right to due
process of law.  In response, the BIA concluded that
Bakarian did not show that his hearing was not fairly
conducted. Accordingly, the BIA dismissed Bakarian's
appeal, and Bakarian now petitions this court for review.


II.

On appeal, Bakarian contends that the IJ erred in apply-
ing the continuous physical presence standard to his case
and failing to consider Bakarian's entry as a non-immigrant
in 1987 in calculating his period of continuous residence.
"When the BIA adopts and supplements the IJ's reasoning,
we review the IJ's decision as supplemented by the BIA."

*BinRashed v. Gonzales*, 502 F.3d 666, 670 (7th Cir. 2007) (citation omitted). We will affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (citation omitted). We may not reverse simply because we would have decided the case differently. *Margos v. Gonzales*, 443 F.3d 593, 597 (7th Cir. 2006) (citations omitted). Instead, we will reverse only if the evidence compels a contrary conclusion. *Youkhana v. Gonzales*, 460 F.3d 927, 931 (7th Cir. 2006) (citation omitted). This court "may review a discretionary decision—such as the denial of a request for an adjustment of status or a denial of a waiver of inadmissibility—only where the petition raises 'constitutional claims or questions of law.'" *Khan v. Mukasey*, 517 F.3d 513, 517 (7th Cir. 2008) (citation omitted).

Pursuant to 8 U.S.C. § 1229b(a), it is within the Attorney General's discretion to:

> cancel removal in the case of an alien who is admissible or deportable from the United States if the alien— (1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of any aggravated felony.

The BIA has interpreted "the plain meaning of the statutory language [to mean that] the respondent's period of residence after his admission as a nonimmigrant . . . may be considered in calculating the period of continuous residence for purposes of [this] section". *In re Blancas-Lara*, 23 I. & N. Dec. 458, 459 (BIA 2002). A period of continuous

residence is deemed to end either when the alien receives notice to appear or commits an offense that would make him inadmissible or removable under certain sections of the immigration code. 8 U.S.C. § 1229b(d)(1). Offenses that render an alien removable include crimes of moral turpitude.[1] *Id.* & 8 U.S.C. § 1182. The Attorney General also has discretion to cancel removal for a non-permanent resident, but only if, among other things, that individual has been "physically present in the United States for a continuous period." 8 U.S.C. § 1229b(b)(1)(A); *see also* 8 U.S.C. § 1229b(d)(2) ("An alien shall be considered to have failed to maintain continual physical presence in the United States . . . if the alien has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days."). Because Bakarian had permanent residence status as of 1990, which was more than five years, it was his burden to establish that he had continuously resided in the United States for seven years after his first admission in order to establish eligibility for relief from removal. *See* 8 C.F.R. § 1240.8(d).

Bakarian notes, and the government concedes, that the IJ in this case repeatedly stated during the hearing that Bakarian had to establish that he had been "continuously *physically present* in the United States for seven years after a lawful admission to the United States." That is not the

---

[1] The IJ found that Bakarian's California and Wisconsin convictions were crimes of moral turpitude, and Bakarian does not appeal that conclusion. Therefore, we need not consider it.

correct legal standard. However, in issuing his final, written order, the IJ did not once mention continuous physical presence. Rather, throughout his order, the IJ cited and applied the proper standard: continuous residence.[2] In determining the period of continuous residence, the IJ also considered Bakarian's admission into the United States in 1987 as a visitor, but found that Bakarian went back and forth to the Soviet Union several times for extended periods of time between 1987 and March 5, 1990, when he entered the United States as a permanent resident. Bakarian's own varied, and often confusing, testimony supports the finding that he went back and forth between the United States and the Soviet Union for extended periods after his initial admittance to the United States in 1987, thereby supporting a conclusion that at the earliest, Bakarian did not begin a period of continuous residence until 1990. Bakarian presented no evidence showing that, in light of his numerous trips back and forth to the Soviet Union, he had established a residence here in the United States upon his arrival as a visitor. The IJ ultimately concluded that Bakarian did not commence his period of

---

[2] For instance, the IJ stated that Bakarian "would satisfy the *continuous residence* requirement under section 240A(a)(2) of the Act if he establishes that he has *resided* in the United States *continuously* for 7 years after having been admitted in any status." (Emphasis added.) The IJ continued by stating that Bakarian's "*continuous residence* ended on August 8, 1996." (Emphasis added.) The IJ noted that "a great deal of testimony was taken to determine exactly when respondent's *continuous residence* began." (Emphasis added.)

continuous residence until 1993, but noted that even if he were to credit Bakarian with starting the period of continuous residence on March 5, 1990, when he first became a permanent resident, Bakarian "still failed to meet the seven year continuous residence requirement." Therefore, considering the record as a whole, the IJ applied the proper legal standard and considered Bakarian's 1987 entrance as a visitor when calculating Bakarian's period of continuous residence.

Bakarian also argues that the IJ erred in applying the stop-time rule, i.e., stopping the time for continuous residence at the time that he committed his theft offenses in 1996, to his case. When the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") became effective on April 1, 1997, a lawful permanent resident's period of continuous residence ended at the time the alien committed certain crimes for which he was convicted or received a Notice to Appeal for removal proceedings, whichever was first. *See* 8 U.S.C. § 1229b(a). Bakarian asserts that the IJ impermissibly applied the stop-time rule, because he contends that the application of the statutory change to him would have an impermissible retroactive effect. In response, the government asserts that this court does not have jurisdiction over this argument because Bakarian failed to exhaust his administrative remedies by not raising this before the BIA.

In order for this court to have jurisdiction over an issue, the petitioner must first exhaust his administrative remedies by raising it before the BIA. *See* 8 U.S.C. § 1252(d)(1). However, there is an exception to the exhaustion require-

ment in instances where "appealing through the administrative process would be futile because the agency is biased or has predetermined the issue." *Didier v. INS*, 301 F.3d 492, 498 (7th Cir. 2002).

Bakarian acknowledges that he did not raise this issue before the BIA, but contends that to have done so would have been futile because the BIA had already determined that the stop-time rule applied retroactively, citing *Matter of Perez*, 22 I. & N. Dec. 689, 691 (BIA 1999) and *Matter of Robles-Urrea*, 24 I. & N. Dec. 22 (BIA 2006). In *Perez*, the BIA concluded that the stop-time rule applied retroactively. However, after the BIA issued its opinion in *Perez*, the Supreme Court decided *INS v. St. Cyr*, 533 U.S. 289 (2001), which held that the repeal of certain discretionary relief from deportation for aliens convicted of aggravated felonies did not apply retroactively, thereby presenting a basis on which to challenge *Perez*. In *Matter of Robles-Urrea*, the BIA addressed such a challenge to the stop-time rule, but concluded that it could be applied to crimes that predated the IIRIRA. While the BIA did determine the issue of retroactivity of the stop-time rule in *Robles-Urrea*, Bakarian's citations do not support his position of futility. *Perez* was decided before *St. Cyr*, and *Robles-Urrea* was not issued by the BIA until September 27, 2006, which was two months after the BIA issued its opinion in Bakarian's case on July 21, 2006. The BIA had not decided this issue prior to Bakarian's appeal to the BIA; thus it would not have been futile for Bakarian to raise it before the BIA. Therefore, Bakarian is not excused from the exhaustion requirement, and because he failed to exhaust this issue, we do not have jurisdiction to review this claim.

Bakarian also asserts that even if 1996 is established as the end period for his continuous residence, he can establish a second period of continuous residence after that date. We need not decide whether the stop-time rule allows for the accrual of a new period of residence because even if the clock was reset in 1996, Bakarian cannot establish a second period of seven years of continuous residence. Bakarian testified that he re-entered the United States in 2000 after committing the 1996 crimes. Because Bakarian was a permanent lawful resident who committed an offense listed in 8 U.S.C. § 1182(a)(2) and had not been granted a waiver of inadmissibility or cancellation of removal, his admission in 2000 would be the start date for a new period of continuous residence. *See* 8 U.S.C. §§ 1101(a)(13)(A), (C), & (C)(v) and 1229b(a)(2) (providing that periods of continuous residence begin after "having been admitted in any status."). This new period of residence would end either on September 5, 2003, when Bakarian committed forgery and his fourth crime of moral turpitude or on June 9, 2004, when he was served with a Notice to Appear before the IJ. Therefore, even if we were to decide whether Bakarian is entitled to a second period of continuous residence, Bakarian could not establish the requisite seven years of continuous residence to be eligible for cancellation of removal.

Bakarian argues that he is entitled to waiver of inadmissibility under the former § 212(c) of the Immigration and Nationality Act because he pleaded guilty to the 1996 crimes prior to the effective date of the INA's amendment. Specifically, Bakarian contends that a § 212(c) waiver would nullify his 1996 convictions, leaving him with

only one crime of moral turpitude for purposes of removability in 2003. Former Section 212(c) of the INA afforded the Attorney General with discretion to waive certain grounds of inadmissibility for lawful permanent residents, who temporarily proceed abroad voluntarily and not under a deportation order, and who are returning to a lawful, unrelinquished domicile of seven consecutive years. Bakarian is correct in asserting that a alien who pleaded guilty prior to the amendment of the INA is entitled to seek waiver of inadmissibility pursuant to the former § 212(c) of the INA, and, therefore, he could have sought a § 212(c) waiver for his 1996 convictions. *INS v. St. Cyr*, 533 U.S. 289, 326 (2001). However, Bakarian's 2003 guilty plea fell outside of the time frame in which he could seek a waiver of inadmissibility afforded in § 212(c) of the INA, and this conviction could be used in conjunction with one of his 1996 convictions as a basis for removability under 8 U.S.C. § 1227. *See Matter of Balderas*, 20 I. & N. Dec. 389, 391-93 (BIA 1991) (holding that a conviction which has previously been relied upon in a charge of deportability, but terminated by a grant of relief under § 212(c), is not expunged or pardoned and may be later alleged as one of the two crimes involving moral turpitude in a second proceeding). Furthermore, the IJ properly concluded, Bakarian "could not have had any reliance on 212(c) eligibility in 2003 [when he pleaded guilty to forgery] as that section had already been repealed." Therefore, the IJ did not err in denying Bakarian relief under the former § 212(c) of the INA.

   Finally, Bakarian also contends that his due process rights were violated. Specifically, Bakarian asserts that he

was not allowed an adequate opportunity to apply for adjustment of status and waiver and precluded from having a reasonable opportunity for his father to testify at his hearing. An alien must have a liberty or property interest in the proceeding to raise a due process claim, and "a petitioner has no liberty or property interest in obtaining purely discretionary relief." *Hamdan v. Gonzales*, 425 F.3d 1051, 1061 (7th Cir. 2005) (quoting *Dave v. Ashcroft*, 363 F.3d 649, 653 (7th Cir. 2004)). The relief Bakarian sought, cancellation of removal or a waiver of inadmissability, was discretionary. Therefore, Bakarian did not have a due process interest in his proceedings and cannot raise a due process claim.

Even if Bakarian had a due process interest, due process requires that an alien have a meaningful opportunity to present evidence at his hearing before the IJ. However, "[w]e have cautioned against leading with an open-ended due process argument and advised that aliens should stick with claims based on the statutes and regulations unless they believe that one of these rules violated the Constitution or that lacunae in the rules have been filled with defective procedures." *Pronsivakulchai v. Gonzales*, 461 F.3d 903, 907 (7th Cir. 2006) (internal citation and quotations omitted). "Aliens have a statutory and regulatory right to a reasonable opportunity to present evidence." *Id.* (citation omitted).

In this case, the IJ granted Bakarian a continuance specifically to provide Bakarian with the opportunity to apply for a waiver and adjustment of status. Bakarian only presented a one-page amendment to his application

for cancellation of removal, but did not file the appropriate application. By granting Bakarian a continuance, the IJ provided Bakarian more than the required statutory protections and did not violate the due process clause. Bakarian also contends that he was deprived of his ability to present his only witness, his father who was paralyzed in California and unable to travel, by the IJ's refusal to transfer the hearing to Los Angeles. Bakarian, though, does not assert what evidence, if any, that his father would have provided beyond what was presented in his father's affidavit, which the IJ accepted as evidence. Without prejudice, there is no due process violation. *Firmansjah v. Gonzales*, 424 F.3d 598, 604 (7th Cir. 2005). Accordingly, the IJ did not violate Bakarian's due process rights.

## III.

The IJ applied the proper standard and considered Bakarian's admittance in 1987 as a visitor in denying Bakarian's application for cancellation of removal, and we do not have jurisdiction over Bakarian's claim that application of the stop-time rule to his case has an impermissible retroactive effect. Bakarian also is not entitled to relief under § 212(c) of the INA. Finally, the IJ did not violate Bakarian's due process rights. We DENY the petition for review.