**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-2434**

RENE GUEVARA-SOLORZANO,

　　　　　Petitioner,

v.

JEFFERSON B. SESSIONS III, U.S. Attorney General,

　　　　　Respondent.

**No. 17-1833**

RENE GUEVARA-SOLORZANO,

　　　　　Petitioner,

v.

JEFFERSON B. SESSIONS III, U.S. Attorney General,

　　　　　Respondent.

On Petitions for Review of Orders of the Board of Immigration Appeals.

Argued: March 20, 2018　　　　　　　　　　Decided: May 24, 2018

Before NIEMEYER and KING, Circuit Judges, and Leonie M. BRINKEMA, United States District Judge for the Eastern District of Virginia, sitting by designation.

—————————

No. 16-2434, petition dismissed in part and denied in part; No. 17-1833, petition dismissed by published opinion. Judge Brinkema wrote the opinion, in which Judge Niemeyer and Judge King joined.

—————————

**ARGUED:** Jeremy Layne McKinney, MCKINNEY IMMIGRATION LAW, Greensboro, North Carolina, for Petitioner. Andrew Nathan O'Malley, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Chad A. Readler, Principal Deputy Assistant Attorney General, Cindy S. Ferrier, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

—————————

BRINKEMA, District Judge:

In this immigration case, petitioner Rene Guevara-Solorzano ("Guevara-Solorzano" or "petitioner") petitions for review of two final orders of the Board of Immigration Appeals ("BIA") respectively issued on December 6, 2016 and July 6, 2017. In petition number 16-2434, Guevara-Solorzano challenges the BIA's determination that he is subject to removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii) (Immigration and Nationality Act ("INA") § 237(a)(2)(A)(ii)) as an alien who has been convicted of two crimes involving moral turpitude ("CIMTs") not arising out of a single scheme of misconduct and that he is ineligible for a waiver of removal under former INA § 212(c). In petition number 17-1833, Guevara-Solorzano challenges the BIA's denial of his motion to reconsider and reopen and, in particular, the BIA's determination that he is subject to removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) (INA § 237(a)(2)(A)(iii)) as an alien who has been convicted of an aggravated felony relating to the illicit trafficking in a controlled substance and is therefore ineligible for cancellation of removal pursuant to 8 U.S.C. § 1229b(a) (INA § 240A(a)).

For the reasons that follow, we hold that petitioner's 1995 conviction for unlawful possession of marijuana with intent to manufacture, deliver, or sell constitutes a conviction of both an aggravated felony and a CIMT. Therefore, we do not have jurisdiction to review petitioner's challenges to the BIA's decisions, except to the extent that they raise constitutional or legal issues. In addition, we hold that petitioner is ineligible for relief under former INA § 212(c) because his 2000 convictions for felony larceny and felony breaking and entering constitute convictions of CIMTs that are not

3

waivable under § 212(c), which was repealed in 1996. Moreover, petitioner is ineligible for cancellation of removal under INA § 240A(a) because such relief is not available to any alien who has been convicted of an aggravated felony. Accordingly, we dismiss petition number 17-1833 and dismiss in part and deny in part petition number 16-2434.

I

Guevara-Solorzano, who is a native and citizen of Mexico, first came to the United States in 1984, when his parents moved to this country to work as manual agricultural laborers. AR 45. In 1990, he adjusted his status to lawful permanent resident. AR 428. On March 13, 1995, Guevara-Solorzano pleaded guilty in Tennessee to the state crime of unlawful possession of marijuana with intent to manufacture, deliver, or sell, in violation of Tennessee Code § 39-17-417. *Id.* On July 20, 2000, he pleaded guilty in state court in Guilford County, North Carolina to felony breaking and entering and felony larceny.[1] *Id.*

The Department of Homeland Security initiated removal proceedings against petitioner on August 12, 2010 by filing a Notice to Appear, which charged Guevara-Solorzano with being subject to removal on three grounds. Specifically, he was charged under 8 U.S.C. § 1227(a)(2)(A)(ii) (INA § 237(a)(2)(A)(ii)) with being an alien who has been convicted of two CIMTs not arising out of a single scheme of criminal misconduct; under 8 U.S.C. § 1227(a)(2)(A)(iii) (INA § 237(a)(2)(A)(iii)) with being an alien who has

---

[1] These two charges apparently stemmed from Guevara-Solorzano's "unlawful entry into a bar and the concurrent larceny of approximately $100 worth of beer and cigarettes." AR 499, 808.

been convicted of an aggravated felony relating to the illicit trafficking in a controlled substance; and under 8 U.S.C. § 1227(a)(2)(B)(i) (INA § 237(a)(2)(B)(i)) with being an alien who has been convicted of a controlled substance offense. AR 905.

At a hearing before an immigration judge ("IJ"), Guevara-Solorzano, through counsel, conceded that he was removable as charged for being an alien convicted of an aggravated felony and of a controlled substance offense; however, he denied that he was subject to removal as an alien convicted of two or more CIMTs not arising out of a single scheme of misconduct. AR 440. After conceding his removability, petitioner sought a waiver under former INA § 212(c), 8 U.S.C. § 1182(c) (repealed 1996), for his 1995 Tennessee marijuana conviction. AR 438-467, 499-502. Section 212(c) authorized discretionary relief from deportation for some permanent resident aliens who had been domiciled in the United States for seven consecutive years; however, between 1990 and 1996, Congress progressively narrowed the class of aliens eligible for § 212(c) relief and repealed § 212(c) entirely in September 1996, replacing it with INA § 240A, 8 U.S.C. § 1229b, which allows some aliens to apply for cancellation of removal but excludes any alien who has been convicted of an aggravated felony. Resp. Br. 5 n.3.

On January 15, 2014, the IJ issued a written decision pretermitting and denying petitioner's § 212(c) application. AR 431-435. The IJ found that Guevara-Solorzano's convictions in 1995 and 2000 were for offenses qualifying as CIMTs that did not arise out of a single scheme of criminal misconduct. Because this ground for removability did not arise until 2000, four years after the statute had been repealed, § 212(c) relief was no longer available at the time Guevara-Solorzano became removable on the CIMT basis.

5

Therefore, the IJ held that Guevara-Solorzano was ineligible for § 212(c) relief with respect to the CIMT ground of removability. *Id.* In reaching this conclusion, the IJ relied on a published BIA decision holding that a conviction "may be alleged as one of the [two CIMTs] in a second proceeding, even though the first proceeding was terminated by" a § 212(c) waiver if "the second crime alleged is a subsequent conviction or a conviction that was not disclosed in the prior proceeding." AR 433 (quoting *In re Balderas*, 20 I. & N. Dec. 389, 391 (BIA 1991)). The IJ also relied on a Seventh Circuit decision directly on point, which held that an alien may not "avoid removal using a section 212(c) waiver" if the alien has a second CIMT conviction to which § 212(c) relief does not apply. AR 434 (citing *Bakarian v. Mukasey*, 541 F.3d 775 (7th Cir. 2008)). Petitioner appealed the IJ's decision to the BIA.

On December 6, 2016, the BIA dismissed Guevara-Solorzano's appeal, AR 355-358, observing that he had conceded that his 2000 convictions were for crimes qualifying as CIMTs and that the marijuana offense to which he pleaded guilty in 1995 constituted an aggravated felony as well as a controlled substance offense, which concessions subjected him to removal, AR 355-356. The BIA further held, relying on BIA precedent establishing that participation in illicit drug trafficking is a CIMT, that petitioner's 1995 conviction also constituted being convicted of a CIMT. AR 356. Although the BIA observed that there was no dispute that a § 212(c) waiver would waive the aggravated felony and controlled substance conviction grounds of removability, both of which relied solely on the 1995 conviction, it held, as had the IJ, that § 212(c) relief was not available to waive the CIMT ground for removability. AR 356-357. According to the BIA,

6

"[b]ecause 'a grant of section 212(c) relief waives the finding of excludability or deportability rather than the basis of the excludability itself,' it cannot waive a charge of deportability where it does not reach one of the convictions that is the basis for the charge." AR 357 (quoting *In re Balderas*, 20 I. & N. Dec. at 391). Because the 2000 convictions, which occurred after the repeal of § 212(c), were one of the bases for the CIMT ground for removability, the BIA determined that § 212(c) was not available to waive this ground. Accordingly, the BIA affirmed the IJ's decision and dismissed the appeal. *Id.* On December 20, 2016, petitioner filed a timely petition in this Court for review of this decision.

On January 5, 2017, petitioner filed with the BIA a motion requesting that the BIA reconsider its December 6, 2016 decision and reopen proceedings to permit him to apply for cancellation of removal pursuant to INA § 240A(a). AR 317-326. The basis of this motion was the combination of the Supreme Court's decision in *Moncrieffe v. Holder*, 569 U.S. 184 (2013), which Guevara-Solorzano contended rendered his 1995 conviction no longer to qualify as a conviction of an aggravated felony, and this Court's decision in *Jaghoori v. Holder*, 772 F.3d 764 (4th Cir. 2014), which petitioner contended rendered him eligible to seek cancellation of removal if his 1995 conviction was not for a crime qualifying as an aggravated felony. The BIA denied Guevara-Solorzano's motion, rejecting his argument that the Tennessee drug statute did not qualify as an aggravated felony and finding that, as an alien who has been convicted of an aggravated felony, he was ineligible for cancellation of removal under INA § 240A(a). AR 3-4. Petitioner filed

a timely petition for review of this decision. Petitioner's two petitions for review have been consolidated and are now before us.

## II

Although orders of removal are generally subject to judicial review, 8 U.S.C. § 1252(a)(1), our jurisdiction is limited by 8 U.S.C. § 1252(a)(2)(C), which provides that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed" an aggravated felony, a controlled substance offense, or, in some situations, two or more CIMTs. Because we always have jurisdiction to determine our jurisdiction, we must first evaluate whether petitioner has been convicted of an offense triggering the jurisdiction-stripping provision. *Argaw v. Ashcroft*, 395 F.3d 521, 523-24 (4th Cir. 2005). Whether a crime is an aggravated felony or a CIMT is a question of law that we review *de novo*. *See Castendet-Lewis v. Sessions*, 855 F.3d 253, 260 (4th Cir. 2017). Of course, we always retain jurisdiction to review "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D).

## III

### A

To determine whether petitioner is removable as an alien who has been convicted of the aggravated felony of "illicit trafficking in a controlled substance," 8 U.S.C. § 1101(a)(43)(B), we must apply the categorical approach, which requires us to "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime, *i.e.*, the offense as commonly understood." *Descamps v. United States*, 570 U.S. 254, 257 (2013). Petitioner's 1995 marijuana conviction

8

categorically qualifies as an aggravated felony conviction "only if the statute's elements are the same as, or narrower than, those of the generic offense" of illicit trafficking in a controlled substance. *Id.* The Supreme Court has determined that the generic offense of illicit trafficking in a controlled substance "encompasses all state offenses that proscrib[e] conduct punishable as a felony under" the Controlled Substances Act ("CSA"). *Moncrieffe*, 569 U.S. at 192 (alteration in original) (internal quotation marks omitted). Accordingly, if there is a "realistic probability" that the relevant Tennessee statute taken as a whole could be applied to conduct that is not punishable as a felony under the CSA, petitioner's conviction under that statute does not categorically qualify as a conviction of an aggravated felony, *see id.* at 191 (internal quotation marks omitted), unless the statute is divisible. To determine whether the statute is "divisible," we must evaluate whether it "list[s] elements in the alternative, and thereby define[s] multiple crimes." *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). Lastly, if the statute is divisible, we may look "to a limited class of documents" to "determine what crime, with what elements, a defendant was convicted of," and then compare this narrower crime to the relevant generic offense, using the categorical approach described above. *See id.*

In 1995, the Tennessee statute that Guevara-Solorzano was convicted of violating, Tennessee Code § 39-17-417, read in relevant part:

> 39-17-417 Criminal offenses and penalties
> (a) It is an offense for a defendant to knowingly:
>     (1) Manufacture a controlled substance;
>     (2) Deliver a controlled substance;
>     (3) Sell a controlled substance; or
>     (4) Possess a controlled substance with intent to manufacture, deliver or sell such controlled substance.

9

. . .

(g)

(1) A violation of subsection (a) with respect to a Schedule VI controlled substance classified as marijuana containing not less than one-half ounce (14.175 grams) nor more than ten pounds (10 lbs.) (4535 grams) of marijuana, or a Schedule VI controlled substance defined as a non-leafy, resinous material containing tetrahydrocannabinol (hashish), containing not more than two pounds (2 lbs.) (905 grams) of hashish is a Class E felony and, in addition thereto, may be fined not more than five thousand dollars ($5,000).

(2) A violation of subsection (a) with respect to a Schedule VI controlled substance classified as marijuana containing not less than ten pounds (10 lbs.), one (1) gram (4536 grams) nor more than seventy pounds (70 lbs.) (31,696 grams) of marijuana, or a Schedule VI controlled substance defined as a non-leafy, resinous material containing tetrahydrocannabinol (hashish) and containing not less than two pounds (2 lbs.), one (1) gram (906 grams) nor more than fifteen pounds (15 lbs.) (6,792 grams) of hashish is a Class D felony and, in addition thereto, may be fined not more than fifty thousand dollars ($50,000).

. . . .

AR 505-507.

The government concedes, *contra* the BIA panel decision in this case, that a conviction under this undivided statute does not qualify as an aggravated felony. Resp. Mem. 20-22. As discussed in *Moncrieffe*, the CSA contains a misdemeanor exception for individuals who distribute a "small amount of marihuana for no remuneration." *See* 21 U.S.C. § 841(b)(4). Although the CSA does not define "small amount," the *Moncrieffe* decision observed that the BIA has suggested that 30 grams, or approximately 1 ounce, is a useful guidepost. *See* 569 U.S. at 194 n.7. The Tennessee statute at issue reaches conduct including possession with intent to deliver one half-ounce, or approximately 14 grams, of marijuana and does not include any reference to remuneration. *See* Tenn. Code § 39-17-417(g)(1). Accordingly, the undivided statute criminalizes conduct including

10

conduct characterized as a misdemeanor under the CSA. Therefore, a conviction under the undivided statute does not categorically constitute a conviction of an aggravated felony of illicit trafficking in a controlled substance.

Although a conviction under the undivided Tennessee statute does not categorically qualify as an aggravated felony conviction, we must next determine whether the statute is divisible with respect to the drug types and quantities listed after subsection (a)[2] and, if so, whether the record indicates that petitioner was convicted under a divided subsection that itself categorically qualifies as illicit trafficking in a controlled substance.

As an initial matter, we find that the statute is divisible because each subsection provides for a different punishment depending on the quantity and type of drug involved. *See Mathis*, 136 S. Ct. at 2256 ("[T]he statute on its face may resolve the issue. If statutory alternatives carry different punishments, then under [*Apprendi v. New Jersey*, 530 U.S. 466 (2000),] they must be elements."). Moreover, the Supreme Court has held that federal courts may "peek" at the "record of a prior conviction itself" to determine whether the statute lists alternative elements. *Id.* at 2256-57 (internal quotation marks omitted). For example, if an indictment "referenc[es] one alternative term to the exclusion of all others," it indicates that "the statute contains a list of elements, each one of which goes toward a separate crime." *Id.* at 2257. Although the indictment underlying petitioner's 1995 conviction does not cite statutory subsections (*e.g.*, (a)(4) or (g)(2)) but

---

[2] The parties do not dispute that § 39-17-417 is divisible with respect to the four offenses listed in subsection (a) and that petitioner was convicted of violating (a)(4). *See* Resp. Mem. 23-24.

11

instead charges petitioner more generally with violating § 39-17-417, it specifically spells out that petitioner was charged in Count 1 with "possess[ing] with intent to sell a controlled substance, to wit: MARIJUANA, in an amount in excess of four thousand five hundred thirty-six (4536) grams," and in Count 2 with "possess[ing] with intent to deliver a controlled substance, to wit: MARIJUANA, in an amount in excess of four thousand five hundred thirty-six (4536) grams." AR 822-823.[3] The indictment's allegations of the type and quantity of drugs indicate that the statutory subsections define different elements. This conclusion is reinforced by the state court judgment specifying that Guevara-Solorzano's conviction was for a Class D Felony, which is consistent only with a conviction under subsection (g)(2) and not with a conviction under subsection (g)(1). AR 821.

This conclusion is bolstered by Tennessee case law, which indicates that the type and quantity of drugs are elements of the offense that must be proven beyond a reasonable doubt. *See, e.g.*, *State v. Walker*, 29 S.W.3d 885, 892-93 (Tenn. Crim. App. 1999) ("We conclude that the trial court erred by failing to instruct the jury that it must find beyond a reasonable doubt that the defendant sold one-half gram or more of cocaine. The amount of cocaine sold by the defendant is an essential element of the Class B felony of selling cocaine."); *State v. Hilliard*, 906 S.W.2d 466, 469-70 (Tenn. Crim. App. 1995)

---

[3] The state court judgment appears to indicate that Guevara-Solorzano pleaded guilty to Count 1, which specified possession with intent to sell, *see* AR 821; however, as discussed below, Tennessee case law indicates that intent to sell and intent to deliver are different means of committing the same crime, not different elements, and it is therefore immaterial to our current analysis whether the guilty plea involved Count 1 or Count 2.

12

(reducing a conviction from a Class B felony to a Class C felony when the indictment failed to allege drug weight because "the type of crime committed depends on the amount possessed, making the amount an element of the offense" that must be alleged in the indictment).

Although petitioner cites two cases for the proposition that the various enumerated drug types and quantities represent "alternative means of violating" the statute "rather than elements of the offense," Pet. Reply 7-8 (citing *Taylor v. State*, No. W2011-27-CCA-43-PC, 2012 WL 432856 (Tenn. Crim. App. Feb. 7, 2012); and *Justice v. State*, No. M2012-183-CCA-R3-PC, 2013 WL 1965999 (Tenn. Crim. App. May 13, 2013)), neither case is helpful to petitioner. In both cases, the court held that the intents specified in subsection (a)(4), which criminalizes possession with the intent to manufacture, deliver, or sell the controlled substance, represent means rather than elements. Accordingly, an indictment need not specify, and a jury need not unanimously agree on, which of the three intents a criminal defendant possessed. Although both cases use the same broad language that could be read to indicate that drug type and quantity are not elements, *see Taylor*, 2012 WL 432856, at *5 ("The offense has three elements: (1) knowing possession, (2) of contraband, (3) with the intent to manufacture, deliver, or sell it."); *Justice*, 2013 WL 1965999, at *10 (quoting *Taylor*), it is clear that the court in each case held only that the intents to manufacture, deliver, and sell are not distinct elements. These two cases do not overcome the conclusion compelled by the case law cited above, and by the varying punishments the statute provides for different drug types and quantities, as well as the record documents in this case, that the drug types and quantities are distinct

13

elements. Therefore, § 39-17-417 is divisible among the various subsections with respect to drug type and quantity, and the record documents further make clear that petitioner was convicted of violating subsections (a)(4) and (g)(2), *see* AR 821-825, which only apply to possession with intent to manufacture, deliver, or sell between ten and seventy pounds of marijuana.

Based on the *Moncrieffe* analysis, such a crime is categorically an aggravated felony because it only involves conduct that would be criminalized as a felony under the CSA, specifically the knowing or intentional "possess[ion] with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). A violation of § 841(a)(1) that involves "less than 50 kilograms of marihuana," with the exception of a violation involving the "distribut[ion of] a small amount of marihuana for no remuneration," *id.* § 841(b)(4), is a felony punishable by a term of imprisonment of not more than five years, *id.* § 841(b)(1)(D). A violation of subsections (a)(4) and (g)(2) of § 39-17-417 involves possessing with intent to manufacture, deliver, or sell between approximately 4.5 kilograms and 31.7 kilograms of marijuana, conduct that is entirely covered by 21 U.S.C. § 841(b)(1)(D) and, therefore, conduct that is criminalized as a felony under the CSA. Accordingly, petitioner's 1995 marijuana conviction was for the aggravated felony of illicit trafficking in a controlled substance.

In response to the government's concession that the BIA incorrectly determined that the undivided Tennessee Code § 39-17-417 categorically matches the aggravated felony of illicit drug trafficking, Guevara-Solorzano argues that we "may affirm the BIA only on the grounds stated in the opinion and may not substitute what [this Court]

14

consider[s] to be a more adequate or proper basis for its conclusion." Pet. Reply 6 (alterations in original) (quoting *Oliva v. Lynch*, 807 F.3d 53, 57 (4th Cir. 2015)). Although this is a correct statement of the law, exceptions have been recognized. For example, in *Crespin-Valladares v. Holder*, 632 F.3d 117 (4th Cir. 2011), the Court acknowledged this rule but declined to remand to the BIA where it was likely that the BIA would reach the same conclusion for more adequate reasons, concluding that under such circumstances a remand would just waste resources. *See id.* at 123.

The question of whether petitioner's 1995 conviction constitutes a conviction of an aggravated felony is determined *de novo* by this Court. Regardless of the basis upon which the BIA reached its decision, our conclusion that petitioner's 1995 conviction does so qualify resolves the issue, and it would waste the resources of the parties and the BIA to remand the question. Moreover, with respect to the categorical approach, the agency has no particular expertise to bring to the matter, nor is there any need to develop or evaluate factual evidence beyond that already in the record. Accordingly, there is no principled reason to remand to the agency.

On this record, the BIA correctly determined, although for the wrong reason, that Guevara-Solorzano was convicted in 1995 of an aggravated felony, thereby rendering him removable pursuant to INA § 237(a)(2)(A)(iii). This conclusion means we are without jurisdiction to review Guevara-Solorzano's petition number 17-1833, which challenges the BIA's denial of his motion to reopen so that it might reconsider its determination that the 1995 conviction qualified as a conviction of an aggravated felony, and that as a result of having that conviction, petitioner is removable and ineligible for

15

cancellation of removal pursuant to INA § 240A(a). For these reasons, petition number 17-1833 must be dismissed.

B

To determine whether Guevara-Solorzano's 1995 marijuana conviction also constitutes a conviction of a CIMT, we must again apply the categorical approach, which involves comparing the elements of the statute of conviction against the elements recognized for a CIMT. A CIMT is a crime that is "inherently base, vile, or depraved," meaning that it involves conduct "that not only violates a statute but also independently violates a moral norm." *Uribe v. Sessions*, 855 F.3d 622, 625 (4th Cir. 2017) (internal quotation marks omitted). This Court has held that a CIMT "requires two essential elements: a culpable mental state and reprehensible conduct." *Sotnikau v. Lynch*, 846 F.3d 731, 735-36 (4th Cir. 2017) (internal quotation marks omitted).[4] Under our previous conclusion that the Tennessee statute is divisible, if the "least of the acts criminalized" by the two subsections (a)(4) and (g)(2), which were violated by petitioner, involves a culpable mental state and reprehensible conduct, then petitioner's conviction constitutes a conviction of a CIMT. *See Moncrieffe*, 569 U.S. at 190-91 (internal quotation marks and alterations omitted).

---

[4] Petitioner argues, in a footnote and without substantial elaboration, that the term "crime involving moral turpitude" should "be declared void for vagueness." Pet. Br. 13 n.3. This Court has recently rejected this argument. *See Boggala v. Sessions*, 866 F.3d 563, 569-70 (4th Cir. 2017).

16

It is clear that a violation of subsections (a)(4) and (g)(2) of § 39-17-417 is a CIMT. First, such a violation requires a culpable mental state because subsection (a)(4) only reaches the "knowing[]" possession of a controlled substance with intent to manufacture, deliver or sell. Tenn. Code § 39-17-417(a). This Court has held that the culpable mental state element is satisfied if the crime includes "knowing or intentional conduct [a]s an element of [the] offense." *Sotnikau*, 846 F.3d at 736 (internal quotation marks omitted). Because subsection (a)(4) includes both a "knowing" element, as well as an intent element, a violation of that subsection requires a culpable mental state.[5]

In addition, a violation of subsections (a)(4) and (g)(2) involves reprehensible conduct. The BIA has "long held that evil intent is inherent in the illegal distribution of drugs and that 'participation in illicit drug trafficking is a crime involving moral turpitude.'" *In re Gonzalez Romo*, 26 I. & N. Dec. 743, 746 (BIA 2016) (quoting *In re Khourn*, 21 I. & N. Dec. 1041, 1046-47 (BIA 1997)). The (g)(2) subsection under which petitioner was convicted reaches only trafficking in quantities of marijuana in excess of ten pounds. Such conduct falls well within the heartland of the illicit drug trafficking described in *Gonzalez Romo* and therefore qualifies as reprehensible. As such, the BIA properly determined that petitioner's 1995 conviction constitutes a conviction of a CIMT.

---

[5] Petitioner argues that the Tennessee offense does not involve reprehensible conduct because Tennessee law allows the jury to infer the intent to deliver, sell, or manufacture from the circumstances, Pet. Br. 17-20; however, Tennessee does not create a presumption that any specific quantity of drugs is indicative of the necessary intent. Instead, the intent element must, like any other element, be proven to the jury beyond a reasonable doubt. Accordingly, this statute satisfies the culpable mental state prong of the CIMT definition.

17

Because there is no dispute that petitioner's 2000 convictions also constitute convictions of CIMTs, petitioner is removable pursuant to INA § 237(a)(2)(A)(ii) as an alien who has been convicted of two or more CIMTs not arising out of a single scheme of criminal misconduct. Accordingly, we are without jurisdiction to review Guevara-Solorazano's petition number 16-2434 to the extent that it challenges the BIA's determination that his two convictions for CIMTs render him removable. Therefore, that portion of the 16-2434 petition must be dismissed, leaving as the only remaining issue whether the BIA correctly found that petitioner is ineligible for relief under former INA § 212(c).

IV

In petition number 16-2434, Guevara-Solorzano also challenges the BIA's determination that he is ineligible for relief under former INA § 212(c) because one of the CIMTs that subjects him to removability occurred after that section was repealed in 1996. That conclusion involves a question of law, which we have jurisdiction to review notwithstanding the BIA's determination that Guevara-Solorzano's 1995 and 2000 convictions render him removable as a criminal alien. 8 U.S.C. § 1252(a)(2)(D). Although such review is *de novo*, we must accord appropriate deference to the BIA under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Larios-Reyes v. Lynch*, 843 F.3d 146, 152 (4th Cir. 2016).

At the time of petitioner's 1995 conviction, § 212(c) stated, in its entirety:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section (other than

18

paragraphs (3) and (9)(C)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title. The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

8 U.S.C. § 1182(c) (1994). Although the section was limited by its terms to aliens returning from abroad, the parties do not dispute that it applies to removal proceedings as well. *See* Resp. Br. 5 n.3 (citing *INS v. St. Cyr*, 533 U.S. 289, 295 (2001)).[6]

The effect of a § 212(c) waiver is to grant discretionary relief from removal for an alien who meets the residency requirement but who has been found deportable for any of a variety of reasons, including the grounds charged for petitioner's removal. The Supreme Court has held that the 1996 repeal of § 212(c) was not retroactive, such that "§ 212(c) relief remains available for aliens . . . [who] would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." *St. Cyr*, 533 U.S. at 326. Here, of the grounds that have been charged for petitioner's deportation, it is undisputed that he would have been eligible for § 212(c) relief with respect to both the aggravated felony and the controlled substance convictions, because both grounds rest entirely on the 1995 marijuana conviction, which pre-dates the repeal of § 212(c). Where the parties

---

[6] For purposes of this analysis, the "terms 'deportation' and 'removal' are interchangeable." *United States v. Moreno-Tapia*, 848 F.3d 162, 165 n.1 (4th Cir. 2017). In 1996, Congress "eliminate[d] the previous legal distinction between deportation, removal and exclusion, merging all of these proceedings into a broader category entitled 'removal proceedings.'" *United States v. Gomez*, 757 F.3d 885, 890 n.1 (9th Cir. 2014). "Cases post-dating this amendment generally use the term 'removal proceedings,'" but some of the relevant cases and statutes "continue[] to refer to 'deportation proceedings.'" *Moreno-Tapia*, 848 F.3d at 165 n.1.

disagree is on the question of whether petitioner is eligible for § 212(c) relief with respect to the CIMT charge of removability, which is based on the combination of the 1995 marijuana conviction and the 2000 North Carolina convictions.

The BIA's decision below,[7] and respondent's argument, are based primarily on *In re Balderas*, 20 I. & N. Dec. 389, in which the BIA considered whether a CIMT that has been used as part of the basis for a "two or more CIMTs" charge of removability in an immigration proceeding that terminated with a § 212(c) waiver may later be used as part of the basis for a "two or more CIMTs" charge of removability if the alien in question commits another CIMT after the first immigration proceeding was terminated.[8] The BIA held that such a previously found CIMT could be used with a new CIMT to support a charge of removability because a "grant of section 212(c) relief 'waives' the finding of excludability or deportability rather than the basis of the excludability itself." *Id.* at 391. In other words, "the crimes alleged to be grounds for excludability or deportability do not disappear from the alien's record for immigration purposes." *Id.* Because this

---

[7] Although the BIA's decision in petitioner's case is not entitled to deference under *Chevron* because it was unpublished, the BIA's interpretation of § 212(c) in *In re Balderas* is entitled to *Chevron* deference because it was published. *See Sijapati v. Boente*, 848 F.3d 210, 215 (4th Cir. 2017).

[8] *In re Balderas* involved an alien who had been charged with being removable on the basis of having committed a petty theft offense and being an accessory to a felony (burglary), both CIMTs. 20 I. & N. Dec. at 390. That proceeding terminated with a § 212(c) waiver. *Id.* at 389. After the proceeding was terminated, the alien was convicted of another petty theft offense qualifying as a CIMT and was again charged with being removable on the basis of having committed two or more CIMTs: the earlier petty theft offense and the newer petty theft offense. *Id.* at 390.

20

interpretation of the effect of § 212(c) relief is a reasonable interpretation of the statutory language, *Chevron* demands that we defer to this construction.

Based on this construction, respondent's position is correct. Because the crimes eligible for § 212(c) relief "do not disappear from the alien's record," petitioner's 1995 marijuana conviction continued to count as a conviction of a CIMT. When he was convicted in 2000 in North Carolina of another CIMT, he became deportable, and by then § 212(c) relief no longer applied. *See also Bakarian*, 541 F.3d at 784 (holding that a 2003 conviction could be used in conjunction with a 1996 conviction to form a basis for removability but that § 212(c) relief would not be available). This construction is not inconsistent with the logic of *St. Cyr*, which held that the repeal of § 212(c) was not retroactive in part because aliens who pleaded guilty to crimes before § 212(c) was repealed "almost certainly relied upon th[e] likelihood [of § 212(c) relief] in deciding whether to forgo their right to a trial." 533 U.S. at 325. By contrast, an alien who has pleaded guilty to an additional CIMT after the repeal of § 212(c) cannot be said to have relied on the possibility of § 212(c) relief in the same way, and it is reasonable to interpret the repeal of § 212(c) as foreclosing relief from a charge of removability based in part on post-1996 criminal conduct. Similarly, the concern expressed by the Supreme Court that retroactive application of the elimination of § 212(c) could improperly "impair[] vested rights acquired under existing law[]," *id.* at 321 (internal quotation marks omitted), is inapplicable to petitioner's situation. Because petitioner did not become deportable on the basis of having committed two or more CIMTs until after 1996, his right to § 212(c) relief with respect to that ground of deportability had not

21

vested at the time § 212(c) was repealed. Lastly, although petitioner cites a single unpublished BIA decision that held in his favor, *see In re Melo*, 2008 WL 1734639 (BIA Mar. 24, 2008), the published *In re Balderas* opinion represents the BIA's authoritative construction of § 212(c) and is the decision entitled to our deference.[9]

Accordingly, the BIA correctly determined that petitioner is ineligible for relief under former INA § 212(c) because one of the CIMT convictions that renders him removable pursuant to INA § 237(a)(2)(A)(ii) occurred after the repeal of § 212(c) in 1996. Therefore, petition number 16-2434 is denied to the extent that it challenges this determination.

V

For the foregoing reasons, petition number 16-2434 is

*DENIED IN PART AND DISMISSED IN PART*,

and petition number 17-1833 is

*DISMISSED*.

---

[9] After oral argument, petitioner submitted a letter pursuant to Fed. R. App. P. 28(j) directing our attention to *In re Abdelghany*, 26 I. & N. Dec. 254, 270-72 (BIA 2014), in which the BIA held, in relevant part, that an alien may be eligible for § 212(c) relief if the alien is "otherwise eligible" and is "presently deportable or removable by virtue of a plea or conviction that occurred before" the repeal of § 212(c), even if the plea or conviction did not render the alien deportable under the law in effect at the time the plea or conviction occurred. Our holding that Guevara-Solorzano is ineligible for § 212(c) relief is not in tension with the BIA's analysis in *In re Abdelghany* because that decision only reaches aliens who are deportable solely by virtue of pre-repeal convictions, which means that it does not answer the question presented by Guevara-Solorzano's situation, in which one of the convictions forming the basis of deportability occurred after § 212(c) was repealed.